Beard *vs.* State.

(Decided 25th March, 1891.)

---

JOSEPH S. BEARD *vs.* STATE OF MARYLAND.

*Disorderly house—Change of Penalty by Statute.*

The Act of 1890, ch. 523, which declares that any person who shall keep a disorderly house shall, on conviction thereof, be subject to certain punishment, does not apply to an offence committed prior to the passage of the Act.

But where a party has been convicted, before the passage of the Act, of the common law offence of keeping a disorderly house, he is liable to the common law penalty after the passage of the Act.

Beard *vs.* State.

APPEAL AS UPON WRIT OF ERROR, from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, FOWLER, McSHERRY, and BRISCOE, J.

*Thomas C. Ruddell,* for the appellant.

*Wm. Pinkney Whyte, Attorney-General,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

The appellant was indicted for the common law offence of keeping a disorderly house, and was convicted by the verdict of a jury in the Criminal Court of Baltimore. He thereupon appealed to this Court upon exceptions reserved during the trial, and pending the appeal was released on bail. In June, 1889, the rulings of the Court below were affirmed (71 *Md.*, 275) and Beard disappeared. His recognizance was forfeited, but he was not taken until the sixteenth day of October, 1890. In the meantime,—that is, after his conviction, and before his arrest in October last,—an Act of Assembly was passed, being *chapter* 523 of the *Acts of January Session,* 1890. That statute enacts that "any person who shall keep a disorderly house shall, on conviction thereof, be subject to a fine of not less than fifty dollars nor more than three hundred dollars, or by (to) imprisonment in jail for not less than ten days nor more than six months, or by (to) both fine and imprisonment." On the eleventh of October a motion in arrest of judgment was filed. It was founded on the change made by this Act of Assembly in the punishment for keeping a disorderly house. This motion was heard by the Supreme Bench of Baltimore City, and overruled, whereupon a sentence of thir-

teen months in jail and twelve hundred dollars fine was imposed by the Criminal Court; and from that final judgment Beard has brought the record into this Court by petition as upon writ of error. The question is, whether the Criminal Court had authority to inflict the punishment it did.

The offence of keeping a disorderly house is a common law misdemeanor. It is not defined in and was not created by any statute of the State. The punishment for it when Beard was convicted was, in the discretion of the Court, a fine or imprisonment or both; and the amount of the fine and the length of the imprisonment were likewise in the Court's discretion. This was the punishment at common law. The Act of 1890, passed after Beard had been convicted and had fled, and before he was sentenced, prescribed, for the first time a statutory penalty, which is greater than the minimum and less than the maximum common law punishment. The common law, and not the statutory penalty, was imposed upon him. He claims that the statute repealed by implication the common law punishment, even as respects cases previously tried and convictions previously had; and that there was, therefore, no power in the Court to impose the penalty it did; and that, consequently, the sentence is a nullity.

As the Act of 1890 makes the minimum penalty for the offence greater than the lowest limit at common law, it is quite apparent that the statute is as to Beard an *ex post facto* law, and that he cannot be punished under it. A law which punishes that which was innocent when done; or adds to the punishment of that which was criminal; or increases the malignity of a crime, is an *ex post facto* law. *Strong vs. The State*, 1 *Blackford*, (*Ind.*), 193; *Calder vs. Bull*, 3 *Dallas*, 386; 1 *Kent's Com.*, 409, *side page*. But whilst he cannot be punished under the statute, does it follow that he cannot, though prop-

·erly convicted, be punished at all? It will be observed
that the Act of 1890 does not create, define, enlarge, or
diminish, or in any way alter or change the common law
offence. It leaves that offence precisely as it found it,
and deals only with the punishment. In dealing with
the punishment it is confined exclusively to the future,
and expressly declares that any person who *shall* keep,—
that is to say, who shall after the passage of that Act
keep—a disorderly house shall be liable to the penalty
provided by the Act. The obvious intention of the Leg-
islature in passing it was, not to interfere with *past* of-
fences, but merely to fix a penalty for *future* ones. The
language employed plainly indicates that the General
Assembly had reference to prospective, and not to con-
summated offences; and it is not to be assumed that the
Legislature purposely enacted the law with a view to re-
lease from all punishment a convicted offender, who was
at that very time a fugitive from justice. There is no
repealing clause in the Act of 1890, and it cannot be
doubted that had the statute contained an express saving
or exception of pending cases from its operation, the
common law penalty could have been lawfully imposed.
Now, as there was no repeal of the old penalty, and as
the plain and evident intention of the Legislature was
merely to apply the new penalty to cases which might
occur in the future; instead of the statute repealing by
implication the common law punishment, it must be
read as continuing that punishment in force as respects
pending cases conformably to the intent of the framers
of the law manifested by the language which they em-
ployed. It was competent to the Legislature to save
from the operation of the Act, cases then pending; and
that saving could have been effected either by express
declaration or by a reasonable implication, arising from
the words actually used. In either instance the saving
would be the result of the legislative intent—and it is

that intent which must control, whether it be made to appear in the one way or the other. If, then, the Court can see from the language of the Act and by the aid of the familiar rules of construction often resorted to, that the Legislature intended to except cases then pending from the operation of the Act, it is as much the duty of the Court to declare such pending cases excepted from the statute as it would be had the Act in so many words expressly contained the exception. The absence of a repeal of the common law penalty, and the particular restriction of the new penalty to cases which might arise after the Act became operative, lead irresistibly to the conclusion that the Legislature intended to retain the former punishment in force as to all cases which had occurred prior to the adoption of the *Act of* 1890, *ch.* 523, and to apply the penalty prescribed by that statute to cases which might arise after its enactment. This conclusion is a necessary one, unless the Act of 1890 be held to have repealed by implication the common law punishment. It is a fundamental principle that the law does not favor repeals by implication, and they will not be adjudged to occur except when they are inevitable, or plainly the Legislature means them. Such legislative intent is never *prima facie* presumed. Hence, in restraint and limitation of repeals, the statutes are strictly construed. *Bishop's Written Law, sec.* 154.

There is nothing in the cases relied on by the appellant's counsel in conflict with the conclusion to which we have come. The case of *Flaherty vs. Thomas,* 12 *Allen,* 428, strenuously pressed upon us in the argument arose in this way: The prisoner was convicted in September, 1865, of the statutory offence of keeping a tenement used for the illegal sale of intoxicating liquors. On May thirty-first, 1866, he was sentenced. On May 29th, 1866, a statute was passed, changing the penalty and repealing "all Acts and parts of Acts inconsistent" there-

Beard *vs.* State.

with.   Upon *habeas corpus* the prisoner was discharged, because the penalty prescribed for his offence when he was convicted had been distinctly repealed before he was sentenced, and the penalty fixed by the later Act could not have been imposed, because not in force when the offence was committed.    That was the precise point before the Court, and, though some observations were made in the opinion respecting a repeal by implication, they were not necessary to the decision of the case as presented, and not involved in its determination.    But the question decided was very different from the one now before us.    Here there has been no express repeal of the former penalty, and, according to our construction, no repeal of it by implication, and we are concerned with a common law offence, and not with an offence created by statute.    In *Keller vs. State*, 12 *Md.*, 322, and *Smith vs. State*, 45 *Md.*, 49, the parties were discharged because the statutes creating the offences with which they were charged had been repealed, and as a necessary conse-·quence the offences themselves were thereby obliterated. That class of cases rests on an entirely different principle, which has no application here.    Where an offence has been created by statute, and that statute has been subsequently repealed without reservations or savings, conviction under it cannot be had, and sentence cannot be imposed even though a conviction has been secured, because it is no longer in force and the offence which it created having ceased ·to exist is no longer punishable at all.

For the reasons we have given, we are of opinion that the Criminal Court was clearly right in imposing the common law penalty upon the appellant, and its judgment must, therefore, be affirmed.

*Judgment affirmed.*

(Decided 25th March, 1891.)