## BRADLEY ET AL. *v.* UNITED STATES

No. 71–1304. Argued January 8, 1973—Decided March 5, 1973

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, BLACKMUN, POWELL, and REHNQUIST, JJ., joined, and in Part I of which BRENNAN and WHITE, JJ., joined. BRENNAN and WHITE, JJ., filed a statement concurring in the judgment, *post*, p. 611. DOUGLAS, J., filed a dissenting opinion, *post*, p. 612.

*William P. Homans, Jr.,* argued the cause and filed a brief for petitioners.

*Deputy Solicitor General Lacovara* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Petersen, Harriet S. Shapiro,* and *Jerome M. Feit.**

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In this case we must decide whether a District Judge may impose a sentence of less than five years, suspend the sentence, place the offender on probation, or specify that he be eligible for parole, where the offender was convicted of a federal narcotics offense that was committed before May 1, 1971, but where he was sentenced after that date. Petitioners were convicted of conspiring to violate 26 U. S. C. § 4705 (a) (1964 ed.) by selling cocaine not in pursuance of a written order form, in violation of 26 U. S. C. § 7237 (b) (1964 ed.). The conspiracy occurred in March 1971. At that time, persons convicted of such violations were subject to a mandatory minimum sentence of five years. The sentence could not be suspended, nor could probation be granted, and parole pursuant to 18 U. S. C. § 4202 was unavailable. 26 U. S. C. § 7237 (d) (1964 ed. and Supp. V). These provisions were repealed by §§ 1101 (b)(3)(A) and (b)(4)(A) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1292. The effective date of that Act was May 1, 1971, five days before petitioners were convicted.

Each petitioner was sentenced to a five-year term.[1] On appeal to the Court of Appeals for the First Circuit,

---

*Briefs of *amici curiae* were filed by *Harvey A. Silverglate* for Ralph De Simone; by *Irwin Klein* for Gerson Nagelberg et al.; and by *Fred M. Vinson, Jr.,* and *Robert S. Erdahl* for seven women prisoners.

[1] Petitioners Bradley, Helliesen, and Odell were found guilty also of unlawfully carrying a firearm during the commission of a felony, in violation of 18 U. S. C. § 924 (c)(2). Each was sentenced to

various points, not here relevant, were raised. Following affirmance of their convictions, petitioners moved that their sentences be vacated and their cases be remanded to the District Court for resentencing pursuant to Fed. Rule Crim. Proc. 35. In their motion they contended that the District Court should have considered "certain sentencing alternatives, including probation, suspension of sentence and parole" which became available on May 1, 1971. The Court of Appeals considered this motion as an "appendage" to the appeal. It held that the specific saving clause of the 1970 Act, § 1103 (a), read against the background of the general saving provision, 1 U. S. C. § 109, required that "narcotics offenses committed prior to May 1, 1971, are to be punished according to the law in force at the time of the offense," and that "under the mandate of § 109 the repealed statute, § 7237 (d) is '[to] be treated as still remaining in force.'" 455 F. 2d 1181, 1190, 1191. Accordingly, the Court of Appeals held that the trial judge lacked power to impose a lesser sentence.

We granted the petition for writ of certiorari, 407 U. S. 908 (1972), in order to resolve the conflict between the First and Ninth Circuits, see *United States* v. *Stephens,* 449 F. 2d 103 (CA9 1971).[2]

## I

At common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them. See *Bell* v. *Maryland,* 378 U. S. 226, 230 (1964); *Norris* v. *Crocker,* 13 How. 429 (1852). Abatement by repeal included a statute's repeal and re-enactment with different

one year in prison; the sentences were suspended, and each was placed on probation for three years on these counts.

[2] See also *United States* v. *McGarr,* 461 F. 2d 1 (CA7 1972); *United States* v. *Fiotto,* 454 F. 2d 252 (CA2 1972).

penalties. See 1 J. Sutherland, Statutes and Statutory Construction § 2031 n. 2 (3d ed. 1943). And the rule applied even when the penalty was reduced. See, *e. g.*, *The King* v. *M'Kenzie,* 168 Eng. Rep. 881 (Cr. Cas. 1820); *Beard* v. *State,* 74 Md. 130, 21 A. 700 (1891). To avoid such results, legislatures frequently indicated an intention not to abate pending prosecutions by including in the repealing statute a specific clause stating that prosecutions of offenses under the repealed statute were not to be abated. See generally Note, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L. Rev. 120, 121–130 (1972).

Section 1103 (a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 is such a saving clause. It provides:

> "Prosecutions for any violation of law occurring prior to the effective date of [the Act] shall not be affected by the repeals or amendments made by [it] . . . or abated by reason thereof."

Petitioners contend that the word "prosecutions" in § 1103 (a) must be given its everyday meaning. When people speak of prosecutions, they usually mean a proceeding that is under way in which guilt is to be determined. In ordinary usage, sentencing is not part of the prosecution, but occurs after the prosecution has concluded. In providing that "[p]rosecutions . . . shall not be affected," § 1103 (a) means only that a defendant may be found guilty of an offense which occurred before May 1, 1971. The repeal of the statute creating the offense does not, on this narrow interpretation of § 1103 (a), prevent a finding of guilt. But § 1103 (a) does nothing more, according to petitioners.

Although petitioners' argument has some force, we believe that their position is not consistent with Con-

gress' intent. Rather than using terms in their everyday sense, "[t]he law uses familiar legal expressions in their familiar legal sense." *Henry* v. *United States,* 251 U. S. 393, 395 (1920). The term "prosecution" clearly imports a beginning and an end. Cf. *Kirby* v. *Illinois,* 406 U. S. 682 (1972); *Mempa* v. *Rhay,* 389 U. S. 128 (1967).

In *Berman* v. *United States,* 302 U. S. 211 (1937), this Court said, "Final judgment in a criminal case means sentence. The sentence is the judgment. *Miller* v. *Aderhold,* 288 U. S. 206, 210; *Hill* v. *Wampler,* 298 U. S. 460, 464." *Id.,* at 212. In the legal sense, a prosecution terminates only when sentence is imposed. See also *Korematsu* v. *United States,* 319 U. S. 432 (1943); *United States* v. *Murray,* 275 U. S. 347 (1928); *Affronti* v. *United States,* 350 U. S. 79 (1955).[3] So long as sentence has not been imposed, then, § 1103 (a) is to leave the prosecution unaffected.[4]

We therefore conclude that the Court of Appeals properly rejected petitioners' motion to vacate sentence and remand for resentencing. The District Judge had no power to consider suspending petitioners' sentences or placing them on probation. Those decisions must ordinarily be made before the prosecution terminates,

---

[3] These cases involve determining whether a judgment in a criminal case is final for the purpose of appeal and determining whether the function of the trial judge has been concluded so that he may not alter the sentence previously imposed to include probation. The precise issues are, of course, different from the issue in this case. But these cases do show the point at which a prosecution terminates, and that is the issue here.

[4] Petitioners also argue that imposition of sentence precedes the suspension of sentence and the grant of probation. But the actions of the District Judge in imposing sentence and then ordering that it be suspended are usually so close in time that it would be unrealistic to hold that Congress intended so to fragment what is essentially a single proceeding.

and § 1103 (a) preserves the limitations of § 7237 (d) on decisions made at that time.

## II

The courts of appeals that have dealt with this problem have failed, however, to consider fully the special problem of the parole eligibility of offenders convicted before May 1, 1971. The Seventh and Ninth Circuits hold that such offenders are eligible for parole.[5] The First Circuit in this case stated that petitioners were "ineligible for suspended sentences, *parole,* or probation." 455 F. 2d, at 1191 (emphasis added).

In the federal system, offenders may be made eligible for parole in two ways. Any federal prisoner "whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of" his sentence. 18 U. S. C. § 4202. Alternatively, the District Judge, "[u]pon entering a judgment of conviction . . . may (1) designate in the sentence of imprisonment imposed a minimum term, at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served, in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine." 18 U. S. C. § 4208 (a).

---

[5] See n. 2, *supra.* We were informed at oral argument that "the Board of Parole is now considering as eligible for parole only defendants who have been sentenced in the Seventh and Ninth Circuits for narcotics offenses." Tr. of Oral Arg. 23. Our disposition of this case has no bearing on the power of the Board of Parole to consider parole eligibility for petitioners under 18 U. S. C. § 4202. See *infra,* at 611.

Section 1103 (a) clearly makes parole unavailable under the latter provision. As we have said, sentencing is part of the prosecution. The mandatory minimum sentence of five years must therefore be imposed on offenders who violated the law before May 1, 1971. And Congress specifically provided that § 4208 (a) does not apply to any offense "for which there is provided a mandatory penalty." Pub. L. 85–752, § 7, 72 Stat. 847. In any event, the decision to make early parole available under § 4208 (a) must be made "[u]pon entering a judgment of conviction," which occurs before the prosecution has ended. Section 1103 (a) thus means that the District Judge cannot specify at the time of sentencing that the offender may be eligible for early parole.

That was the only question before the Court of Appeals, and it is therefore the only question before us. Petitioners' motion, on which the Court of Appeals ruled, requested a remand so that the District Judge could consider the sentencing alternatives available to him under the Comprehensive Drug Abuse Prevention and Control Act of 1970. That Act, however, did not expand the choices open to the District Judge in this case, and the Court of Appeals correctly denied the motion to remand. The availability of parole under the general parole statute, 18 U. S. C. § 4202, is a rather different matter,[6] on which we express no opinion.

*Affirmed.*

MR. JUSTICE BRENNAN and MR. JUSTICE WHITE join Part I of the Court's opinion and would affirm for the reasons there expressed. They are also of the view that

---

[6] The decision to grant parole under § 4202 lies with the Board of Parole, not with the District Judge, and must be made long after sentence has been entered and the prosecution terminated. Whether § 1103 (a) or the general saving statute, 1 U. S. C. § 109, limits that decision is a question we cannot consider in this case.

§ 1103 (a) forecloses the availability of parole under both 18 U. S. C. § 4202 and 18 U. S. C. § 4208 (a), and that even if this were debatable as to § 4202, the general saving statute, 1 U. S. C. § 109, clearly mandates that conclusion as to that section. They therefore do not join Part II of the Court's opinion.

Mr. Justice Douglas, dissenting.

The correct interpretation of the word "prosecutions" as used in § 1103 (a) of the 1970 Act was, in my view, the one given by the Court of Appeals of the Ninth Circuit in *United States* v. *Stephens,* 449 F. 2d 103, 105:

> "Prosecution ends with judgment. The purpose of the section has been served when judgment under the old Act has been entered and abatement of proceedings has been avoided. At that point litigation has ended and appeal is available. Koromatsu v. United States, 319 U. S. 432, 63 S. Ct. 1124, 87 L. Ed. 1497 (1943). What occurs thereafter—the manner in which judgment is carried out, executed or satisfied, and whether or not it is suspended—in no way affects the prosecution of the case."

The problem of ambiguities in statutory language is not peculiar to legislation dealing with criminal matters. And the question as to how those ambiguities should be resolved is not often rationalized. The most dramatic illustration, at least in modern times, is illustrated by *Rosenberg* v. *United States,* 346 U. S. 273, where a divided Court resolved an ambiguity in a statutory scheme against life, not in its favor. The instant case is not of that proportion, but it does entail the resolution of unspoken assumptions—those favoring the status quo of prison systems as opposed to those who see real rehabilitation as the only cure of the present prison crises. As Mr. Justice Holmes said, "judges do and must legislate, but they can do so only interstitially; they are confined from

molar to molecular motions." *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 221 (dissenting opinion).*

Judges do not make legislative policies. But in construing an ambiguous word in a criminal code, I would try to give it a meaning that would help reverse the long trend in this Nation not to consider a prisoner a "person" in the constitutional sense. Fay Stender, writing the introduction to Maximum Security, p. X, has described some of the "tremendously sophisticated defenses against the least increase in the enforceable human rights available to the prisoner." (E. Pell ed., Bantam Books 1973).

A less strict and rigid meaning of the present Act would be only a minor start in the other direction. But it is one I would take.

---

*Mr. Justice Holmes also said:

"[I]n substance the growth of the law is legislative. And this in a deeper sense than that that which the courts declare to have always been the law is in fact new. It is legislative in its grounds. The very considerations which the courts most rarely mention, and always with an apology, are the secret root from which the law draws all the juices of life. We mean, of course, considerations of what is expedient for the community concerned. Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but none the less traceable to public policy in the last analysis. And as the law is administered by able and experienced men, who know too much to sacrifice good sense to a syllogism, it will be found that when ancient rules maintain themselves in this way, new reasons more fitted to the time have been found for them, and that they gradually receive a new content and at last a new form from the grounds to which they have been transplanted. The importance of tracing the process lies in the fact that it is unconscious, and involves the attempt to follow precedents, as well as to give a good reason for them, and that hence, if it can be shown that one half of the effort has failed, we are at liberty to consider the question of policy with a freedom that was not possible before." Common Carriers and the Common Law, 13 Am. L. Rev. 609, 630–631 (1879).