August 27, 1979

## 79-62 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Transportation of Executive Branch Officials by Government Passenger Motor Vehicles (31 U.S.C. § 638a)

This responds to your request of July 20.

Home-to-work transportation in Government vehicles is governed by 31 U.S.C. § 638a(c)(2).[1] It prohibits generally the transportation of executive branch officials between their homes and places of employment by Government-owned passenger motor vehicles. Exceptions are provided for the following: (1) medical officers on out-patient medical service; (2) officers engaged in field work where approved by the head of the department concerned; (3) official use of the President and heads of executive departments, and (4) ambassadors and other principal diplomatic

---

[1]The text of the provision is as follows:

    (c) Unless otherwise specifically provided, no appropriation available for any department shall be expended

          \*   \*   \*   \*   \*   \*   \*

    (2) for the maintenance, operation, and repair of any Government-owned passenger motor vehicle or aircraft not used exclusively for official purposes; and "official purposes" shall not include the transportation of officers and employees between their domiciles and places of employment, except in cases of medical officers on out-patient medical service and except in cases of officers and employees engaged in field work the character of whose duties makes such transportation necesssary and then only as to such latter cases when the same is approved by the head of the department concerned. Any officer or employee of the Government who willfully uses or authorizes the use of any Government-owned passenger motor vehicle or aircraft or of any passenger motor vehicle or aircraft leased by the Government, for other than official purposes or otherwise violates the provisions of this paragraph shall be suspended from duty by the head of the department concerned, without compensation, for not less than one month, and shall be suspended for a longer period or summarily removed from office if circumstances warrant. The limitations of this paragraph shall not apply to any motor vehicles or aircraft for official use of the President, the heads of the executive departments enumerated in section 101 of title 5, ambassadors, ministers, charges d'affaires, and other principal diplomatic and consular officials.

and consular officials. The statute also covers independent establishments and other agencies, wholly owned Government corporations, and the government of the District of Columbia, but not members of Congress and the Architect of the Capitol.[2]

We understand that our opinion is wanted with respect to the following particular questions: (1) the scope of the Comptroller General's implied exception to § 638a(c)(2) permitting home-to-work travel "in the interest of the Government;" (2) whether an appropriation for the purchase and operation of passenger motor vehicles implicitly authorizes their use for home-to-work transportation; (3) whether the statutory exception for "ambassadors * * * and other principal diplomatic and consular officers" extends to officials in the United States whose duties involve national defense and foreign policy; (4) the nature of "field work" in which home-to-work transportation may be allowed by an agency head; and (5) whether the statute applies to independent regulatory agencies and, if so, whether the President is empowered to promulgate implementing regulations for those agencies.

We will address these questions *seriatim.*

Your first question concerns the scope of the Comptroller General's view that home-to-work transportation may be provided when it is in the Government's interest and not merely for personal convenience. In our opinion, the scope of that exception is narrow.

Section 638a(c)(2) has a sparse and unilluminating legislative history. Between 1935 and 1946 it appeared sporadically in appropriation acts[3] and was enacted into permanent law in 1946.[4] Neither the committee reports nor the debates discuss it.[5] Its enactment appears to have been prompted by a recommendation of the Joint Committee on the Reduction of Unnecessary Federal Expenditure stating that the use of Government vehicles should be curtailed, both to save money and to conserve fuel in wartime. The Joint Committee expressed concern over both the private use of Government vehicles and the general level of use.[6]

---

[2]Section 638a(c)(2) was enacted as § 16 of the Administrative Expenses Act of 1946, 60 Stat. 810. Section 18 of that Act, 41 U.S.C. § 5a, defines "department" as follows:

> The word "department" as used in this Act shall be construed to include independent establishments, other agencies, wholly owned Government corporations * * * and the government of the District of Columbia, but shall not include the Senate, House of Representatives, or office of the Architect of the Capitol, or the officers or employees thereof.

*See also* 41 CFR § 1-1.102 (1978).

[3]*See* Act of March 15, 1934, ch. 70, § 3, 48 Stat. 450; Independent Officer Appropriation Act, 1944, ch. 145, § 202(a). 57 Stat. 195.

[4]Administrative Expenses Act of 1946, ch. 744, § 16, 60 Stat. 810.

[5]*See* H. Rept. 109, 78th Cong., 1st sess. (1943). S. Rept. 247, 78th Cong., 1st sess. (1943).

[6]*See* S. Doc. 5, 78th Cong., 1st sess. at 2–4; 89 CONGRESSIONAL RECORD 895–896 (1943); 88 CONGRESSIONAL RECORD 4225–4226 (1942).

The statute prohibits expenditure of funds for the operation of any Government passenger motor vehicle not used exclusively for "official purposes." It excludes from "official purposes" home-to-work transportation for Government employees, other than those specifically excepted. Despite the plain language of the statute, the Comptroller General in a series of three opinions holds that an additional exception may be implied for situations in which an agency decides that such transportation is "in the interest of the Government."[7] He reasoned as follows:

> In construing the specific restriction in this statute against employee use of government-owned vehicles for transportation between domicile and placement of employment, our Office has recognized that its primary purpose is to prevent the use of Government vehicles for the personal convenience of an employee. In this regard we have long held that use of a Government vehicle does not violate the intent of the cited statute where such use is deemed to be in the interest of the Government. We have further held that the control over the use of Government vehicles is primarily a matter of administrative discretion, to be exercised by the agency concerned within the framework of applicable laws. 25 Comp. Gen. 844 (1946). [54 Comp. Gen. at 857.]

But this sweeping language has been applied narrowly by both the Comptroller General and this Department.

The implicit exception theory first appeared in dictum in 25 Comp. Gen. 844, 846–847 (1946). That decision involved a claim for cab fare from an employee's home to the place where he obtained a Government car for official travel. The claim was disallowed on the general principle that an employee must bear his own commuting expenses. In passing, the Comptroller General said that § 638a(c)(2) would not have prohibited the employee from "using a Government automobile to drive to his residence when it is in the interest of the Government that he start on official travel from that point, rather than from his place of business." *Id.* at 847.

He applied this implicit exception in two instances in 1975. In the first he held it to be in the Government's interest to provide home-to-work transportation for military employees abroad where the Department of Defense determined that there was a "clear and present" danger of terrorism. But the decision cautioned that it would be best for the Department of Defense to obtain specific statutory authority for this[8] and concluded that it would be an abuse of discretion to provide transportation in countries where no clear and present danger existed. 54 Comp. Gen. 854, 857–858 (1975).[9] In the second instance, the Comptroller General approved

---

[7] *54 Comp. Gen.* 1066 (1975); 54 Comp. Gen. 855 (1975); 25 Comp. Gen. 844 (1946).

[8] It appears that no such authority was obtained.

[9] *See* OLC Memorandum of November 1978, to the Counsel to the President, "Home-to-Work Transportation of White House Employees;" letter of November 16, 1978, to Senator Proxmire from the Assistant Attorney General for Administration.

the transportation of essential employees where a strike rendered normal public transportation unavailable. To avoid personal benefit to the employees, however, the decision states that transportation must be limited to "temporary emergencies" and that employees must pay the equivalent of commercial fares. 54 Comp. Gen. 1066, 1067–1068 (1975).

This Department has heeded that home-to-work transportation may be provided for the Director, Federal Bureau of Investigation, the Assistant to the President for National Security Affairs, and the Assistant Attorney General, Office for the Improvements in the Administration of Justice. For the first two individuals, it was the judgment of the responsible officers that a genuine danger to their personal safety existed. In our opinion, travel for the Assistant Attorney General was primary in the interest of the Government because his personal services were unique and indispensable and a temporary medical condition made it impracticable for him to use other transportation.[10]

With respect to both the Director of the Federal Bureau of Investigation and the Assistant to the President, additional factors were cited. Both were said to need communications equipment in the car to be able to respond to crises. In addition, it was said that the Government automobile permitted the Director to protect official documents that he took home. Standing by themselves, we doubt that these factors justify home-to-work transportation. They are common to large numbers of senior officials with duties involving national defense, foreign policy, or law enforcement. Rather than being the product of forces beyond the control of the employing agency, they are inherent in the position. If such common circumstances made home-to-work transportation primarily for the Government's convenience, the statute's express prohibition would be a dead letter for a significant number of senior officials. Nothing in its text, background, or prior interpretation supports a reading so contrary to its plain meaning.

This is a true *a fortiori* of another justification sometimes given for home-to-work transportation, namely, that it conserves the valuable time of senior officials by permitting them to work while being transported. There is hardly a senior officer to whom this rationale would not, in fact or fancy, apply. It would also make the statute nearly a dead letter for any officer with sufficient status to have a regularly assigned automobile. A senior official may lengthen his or her working day, if necessary, by coming earlier, leaving later, and living closer to the office. Using Government transportation instead is a matter of personal convenience.[11]

---

[10]Memorandum of August 29, 1977, "Automobile Transportation for Assistant Attorney General Meador." Transportation for Mr. Meador was originally approved for 60 days. It has been subsequently extended indefinitely because his medical condition proved permanent.

[11]*Cf.* 23 Comp. Gen. 352, 357 (1943); 19 Comp. Gen. 836–837 (1940).

We are aware of nothing that supports a broad application of the exception implied by the Comptroller General. That exception may be utilized only when there is no doubt that the transportation is necessary to further an official purpose of the Government. As we view it, only two truly exceptional situations exist: (1) where there is good cause to believe that the physical safety of the official requires his protection, and (2) where the Government temporarily would be deprived of essential services unless official transportation is provided to enable the officer to get to work. Both categories must be confined to unusual factual circumstances.

The second question is whether an appropriation for the purchase, operation, or hire of passenger motor vehicles implicitly authorizes their use for home-to-work transportation. In our opinion, it does not.

Section 638a(a) provides that, "[u]nless specifically authorized by the appropriation concerned or other law," no appropriation may be used to hire or purchase passenger motor vehicles other than those for the President and heads of the executive departments. As part of the Administrative Expenses Act, this provision also applies to all executive establishments. *See* footnote 2, *supra.* Its purpose is to retain congressional control over procurement of passenger cars.[12] Accordingly, appropriations specifically provide for the purchase or hire of passenger motor vehicles.[13] And § 638a(c)(2) similarly states that an appropriation must "specifically" provide that it is available for home-to-work transportation. We are aware of only one instance in which Congress has done so.[14] Since the exceptions to § 638a call for two separate "specific" statements serving two separate purposes, an appropriation for the procurement of passenger automobiles for official use plainly does not imply authority to use them for home-to-work transportation. Were this not so, any agency that could buy automobiles could use them without regard to § 638a(c)(2).

The third question is whether the "ambassadors, ministers, charges d'affaires, and other principal diplomatic and consular officers" excluded from the prohibition of § 638a(c)(2) include officials in the United States whose duties involve national defense or foreign relations. Our opinion is that they do not.

These terms are not defined in the statute or discussed in its legislative history. They do, however, have a well-established connotation of persons who represent a government abroad. They have been construed as respectively, the accredited representatives of the United States abroad and of

---

[12]*See generally* 44 Comp. Gen. 117 (1964).

[13]*See, e.g.,* Act of June 30, 1976, Pub. L. No. 94–330, 90 Stat. 778; Military Construction Appropriation Act, 1966, Pub. L. No. 89–202, § 105, 79 Stat. 837; Department of Justice Appropriation Act, 1950, Pub. L. No. 179, 63 Stat. 460.

[14]*See* Legislative Branch Appropriation Act, 1979, 92 Stat. 786 (shuttle buses for Library of Congress employees).

of foreign states here.[15] Their technical meaning is that ambassadors, ministers, and charges d'affaires are the chief officers of a diplomatic mission abroad.[16] By familiar principles of statutory construction, Congress should be understood as having used these terms to accord with their technical meaning as reinforced by prior legal usage.[17] The named officials refer to senior diplomatic officials representing this country abroad. By the principle of *ejusdem generis,* the class of "other principal diplomatic and consular officers" is limited to persons of the same type—that is, senior officials who represent the United States abroad.[18] This interpretation confines the exclusion to a well-defined group that Congress rationally could have set apart for reasons of protocol, prestige, and usage, and thus it is not inconsistent with the general purpose of § 638a(c)(2).

The next question is the nature of the limited exception for "field work." This is also a technical term. For purposes of pay and classification, the civil service laws distinguish between the "departmental" service on the one hand and the "field" service on the other. As explained in a decision by the Comptroller of the Treasury, 21 Comp. Dec. 708, 711 (1915):

> The executive departments of Government execute the laws which Congress enacts through the instrumentalities sometimes designated "departmental" and "field" establishments. What is known as the "field force" is engaged, directly or indirectly, in locally executing the laws, while the "departmental force" is engaged in general supervisory and administrative direction and control of the various field forces.[19]

Field employees are located for the most part, out of Washington. In many cases, such as inspectors, extension agents, or law enforcement personnel, their work involves visits to scattered locations away from their office. Departmental employees, on the other hand, would be concentrated in Washington, and their routine duties would be performed at their posts.

As we have said above, Congress is usually understood to have used a technical legal term in accordance with its legal meaning. Thus, "field work" consists of the execution of statutory programs by individuals below the policy level stationed away from the seat of government. It often saves considerable time for these individuals to go directly from their homes to a workplace away from their office, and it reasonably can be

---

[15]*Ex Parte Gruber,* 269 U.S. 302, 303 (1925); *In re Baiz,* 135 U.S. 403, 424–425, 432 (1890); 7 Op. Atty. Gen. 186, 190–192 (1855). *See also, The Federalist,* No. 81, at 510–511 (Harvard ed. 1961).

[16]*See* 7 Whiteman, *Digest of International Law,* §§ 2, 15; 4 Rackworth, *Digest of International Law* § 370, at 394–396; *id.,* § 371, at 398.

[17]*See, Bradley* v. *United States,* 410 U.S. 605, 609 (1973): *Standard Oil Corp.* v. *United States,* 221 U.S. 1, 51 (1911).

[18]*See, e.g., Cleveland* v. *United States,* 329 U.S. 14, 18 (1946); *United States* v. *Stever,* 222 U.S. 167, 174–175 (1911).

[19]*Accord,* 19 Comp. Gen. 630, 631 (1940); 5 Comp. Gen. 272, 273–274 (1925).

viewed as within the Government's interest for them to do so.[20] The "field work" exception therefore should be viewed as an express recognition by Congress that it is in the Government's interest for official vehicles to be used in this way, subject to the control of the agency head.

Your final question is whether § 638a(c)(2) applies to independent regulatory agencies and, if so, whether the President has the power to promulgate regulations implementing the statute for these agencies. We believe that the statute does apply to independent regulatory agencies, and that the President has the power to promulgate implementing regulations for that purpose.

Section 638a(c)(2) provides that no appropriation available for any "department" shall be expanded for the use of vehicles for other than official purposes. We have pointed out above,[21] that the Administrative Expenses Act of 1946 provides that the term "department" shall be construed to include *"independent establishments, other agencies*, wholly owned Government corporations * * * and the government of the District of Columbia * * * ."* [Emphasis added.]

The President may promulgate regulations to enforce § 638a for both executive departments and independent establishments. The President's authority has two sources. First, 5 U.S.C. § 7301 empowers him to "Prescribe regulations for the conduct of employees in the executive branch." Under this authority, the President and his delegates have promulgated regulations governing employee conduct in agencies throughout the executive branch, including the independent regulatory agencies.[22] Authority under § 7301 has been held to include regulations relating to the use of Government property.[23]

The second source of authority is the Federal Property and Administrative Services Act, 40 U.S.C. § 471 *et seq.* This statute applies to all the executive agencies, including independent establishments.[24] Its general purpose is to provide an efficient and economical system for the procurement, supply, and utilization of Government personal property.[25] Under it, the Administrator of General Services has the power to "procure and supply personal property * * * for the use of executive agencies in the proper discharge of their responsibilities" to the extent that he determines it advantageous in terms of economy and efficiency.[26] The President may prescribe policies and directives "not inconsistent" with the provisions of the Act that he considers necessary, and these are binding on executive

[20]*See* 25 Comp. Gen. 844, 847 (1946).

[21]*See* pp. 1–2 and note 2, *supra*.

[22]*See* Exec. Order No. 11222 (1965); 5 CFR § 735.102(a)(Civil Service Commission); 16 CFR § 5.2 (FTC); 29 CFR Part 100 (NLRB); 29 CFR § 1600.735-1 (EEOC); 47 CFR § 19.735-107 (FCC); 49 CFR Part 1000 (ICC).

[23]*See, Kaplan* v. *Corcoran*, 545 F. (2d) 1073, 1077 (7th Cir. 1976): *see generally, Old Dominion Branch No. 496, AFL-CIO* v. *Austin*, 418 U.S. 264, 273, n. 5 (1974).

[24]40 U.S.C. § 472(a).

[25]40 U.S.C. § 471.

[26]40 U.S.C. § 481(a)(3).

agencies generally.[27] Subject to the President's authority, the Administrator may issue such regulations as he considers necessary to effectuate his functions under the Act.[28] At present, there is a specific General Services Administration regulation directing all executive agencies, which includes independent establishments,[29] to comply with § 638a(c)(2).[30]

LEON ULMAN

*Deputy Assistant Attorney General*

*Office of Legal Counsel*

---

[27] 40 U.S.C. § 486(a).
[28] 40 U.S.C. § 486(c).
[29] *See* p. 9 and note 25, *infra*.
[30] 41 CFR § 101–38.1304(c) (1978).