Odessa L. **CRIALES,** Appellant,

v.

**UNITED STATES,** Appellee.

No. 91–CM–1415.

District of Columbia Court of Appeals.

Argued Feb. 9, 1993.
Decided March 5, 1993.

Kenneth H. Bernstein, Washington, DC, for appellant.

Halsey B. Frank, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and James N. Plamondon, Asst. U.S. Atty., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Found guilty after a bench trial of solicitation for lewd and immoral purposes (D.C.Code § 22–2701), appellant contends that the trial judge erred in denying her motion to suppress evidence admitted against her at trial. Specifically, she contends that the search warrant authorizing the search of the premises where she was an employee was defective; that in executing the search the police violated Rule 41 of the Superior Court Rules of Criminal Procedure; and that the police similarly failed to comply with the knock and announce requirements of 18 U.S.C. § 3109. We affirm.

## I.

The evidence relevant to the suppression issue, viewed in the light most favorable to the government, revealed that after an investigation lasting several months and including surveillance and undercover operations, Detective Levasseur of the Metropolitan Police Department prepared an affidavit for a warrant to search the Physical Culture Center, located in Northwest Washington and better known as the Capitol Health Club (CHC). The affidavit was based upon information from police officers that the club was being used for prostitution.[1] Levasseur and an Assistant United States Attorney signed and dated the affidavit on November 29, 1990, and the warrant itself was signed by Judge Winfield the same day, though it was never dated.

Before the police executed the warrant on December 3, 1990, Detective Gilkey, posing as a customer and wearing a recording and transmitting device, entered the CHC to confirm the presence of prostitution on the premises. Gilkey gave appellant fifty dollars in pre-recorded police money and asked her to have sex with him. They retired to a private room, appellant told Gilkey to "get comfortable," and appellant returned with a towel, bottles of lotion, and a condom. Gilkey then gave appellant an additional seventy dollars in pre-recorded money and appellant began to undress, whereupon Gilkey signalled the search team to execute the warrant.

Two uniformed officers entered the club through an unlocked or open door from the street to execute the search warrant.[2] No one attempted to obstruct their entry or the execution of the search. Levasseur followed, announcing that he had a search warrant and holding the warrant in his hand. The search team then walked up the stairs and through the door of the club to the waiting area, where they saw several persons in the office space. They informed these persons that they had a warrant, then located Detective Gilkey and appellant. Seventy dollars of the pre-recorded

---

1. Detective Ahn, acting undercover, had arrested a Ms. Mosley for solicitation inside the CHC on September 20, 1990. Detective Levasseur then placed the CHC under surveillance from an unmarked police car across the street on at least six occasions. He observed many men visit the club for short periods of time (15 to 20 minutes) and interviewed some of them after they left the club. Three men admitted they had visited the club in order to engage in sexual acts.

2. The record is somewhat unclear whether the door was literally wide open or simply unlocked. Trial testimony was that "the door was open." The trial judge found that "the door was

literally open to the public.... [T]here was no need for the police to stand outside the open*ed* door and knock" (emphasis added).

There was testimony suggesting that the door opening to the street may have been the entrance to a multi-unit commercial building in which the club was but one tenant, rather than the entrance to the club itself. The government mentions but does not press with vigor the argument that appellant lacked both a Fourth Amendment and any statutory interest in privacy entitling her to challenge the entry through this door. In view of our disposition of the appeal, we need not resolve this issue.

money was on a bench next to appellant. Another fifty dollars in pre-recorded funds, as well as condoms, were seized from the office. Detective Levasseur let one of the employees telephone "associates of the business" to inform them of the search. Since everyone in the club had been arrested, he left a copy of the warrant and return (or inventory) on the premises.

On November 5, 1991, Judge Wynn heard suppression motions on behalf of all the defendants,[3] and denied appellant's motion.

## II.

Appellant contends that the evidence admitted against her should have been suppressed as the fruit of an unlawful search,[4] because the warrant itself was undated and because the officers failed to comply with the requirement that they knock and announce their authority before entering (18 U.S.C. § 3109; Super.Ct.Crim.R. 41(e)(3)) as well as the rule requiring them to provide a copy of the warrant and return to an occupant of the premises. Super.Ct.Crim.R. 41(e)(4).

■ First, relying on the rule that a warrant must be executed within ten days of its date of issuance (Super.Ct.Crim.R. 41(e)(1)), appellant contends that the warrant was facially invalid because it was undated. *See also* Super.Ct.Crim.R. 41(d) ("A search warrant shall contain ... the date of issuance"). This argument has no merit. Although the warrant itself was undated, the affidavit was dated, and there is no dispute that the warrant was issued that same day or the next and executed within four days. Judge Wynn found that

the warrant was attached to the affidavit and referred to it. *Cf. United States v. Moore,* 263 A.2d 652, 653 (D.C.1970) (warrant valid under Fourth Amendment where affidavit's description of place to be searched was incorporated into warrant). Since there was no delay in executing the warrant beyond the time permitted by Rule 41(e)(1),[5] and since appellant has shown no prejudice from any delay in the execution, *Johnson v. United States,* 255 A.2d 494, 495 (D.C.1969), the omission of the date from the face of the warrant provided no ground for suppression.

■ Appellant next argues that the police violated the knock and announce requirements of 18 U.S.C. § 3109. *See Griffin v. United States,* 618 A.2d 114 (D.C. 1992). She appears to direct this argument chiefly to Detective Gilkey's entry in an undercover capacity, an argument plainly without merit. The knock and announce rule is intended to protect privacy and reduce the possibility of harm flowing from an unannounced entry. *United States v. White,* 168 U.S.App.D.C. 309, 514 F.2d 205 (1975). Appellant, however, was engaged in a business (though an illicit one) open to the public. "A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." *Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966).[6] The trial judge rejected any notion that Gilkey's entry—intended to confirm the presence of prostitution on the premises— was a subterfuge to relieve the executing officers of any statutory obligation they otherwise had.[7] Requiring Gilkey to have

---

3. The codefendants were tried apart from appellant by a jury.

4. In view of our disposition of the appeal, we need not consider the government's argument that any error in the admission of evidence derived from the execution of the warrant was harmless in view of the independent evidence of appellant's guilt.

5. *See Curtis v. United States,* 263 A.2d 653, 655 (D.C.1970) (requirement of prompt execution of warrant "is to insure that the probable cause existing when the warrant issued also exists when it is executed").

6. That is true even where "the *home* is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business," for "that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." *Lewis,* 385 U.S. at 211, 87 S.Ct. at 427 (emphasis added).

7. The judge found "that the undercover activity was really separate and apart from the execution of the search warrant." Nor was there evidence—nor did the trial judge find—that Gilkey had rummaged about in the offices or oth-

announced his identity would have thwarted the very purpose of his entry as an undercover officer. Since appellant welcomed Gilkey as a paying customer, her consent nullifies any claim that he violated § 3109. *See United States v. Sheard,* 154 U.S.App.D.C. 9, 13, 473 F.2d 139, 143 (1972), *cert. denied,* 412 U.S. 943, 93 S.Ct. 2784, 37 L.Ed.2d 404 (1973).

▮ Appellant further argues that, despite Gilkey's previous admission to the premises, the entry by the executing officers without knocking amounted to a breaking and entering [8] that fell within neither exception to the knock and announce statute. *See Williams v. United States,* 576 A.2d 700, 703 (D.C.1990) (describing purposes of statute and exceptions). Judge Wynn's rejection of this argument, however, is well-reasoned and conclusive:

> The defense [has] argued that a breaking is sort of a term of art and it doesn't require any use of force but instead simply crossing the line onto the private property. I think that, … although that might be true in one's home, … that would not be true in a commercial establishment which is open to the public; … there would have to be some element of force, some bar to the entry.
>
> And in this case there was none; in this case the evidence is that the door was literally open to the public. Not only the door downstairs on Wisconsin Avenue but also the door at the top of the stairs which provided the entry into the health club itself.
>
> Given those facts, I find that there was no breaking here; and because these doors were open to the public and did in fact invite the public in, … there was no need for the police to stand outside the opened door and knock. I don't believe

that the statute requires that kind of sort of a meaningless gesture.

> I do believe that the statute requires, once the entry is accomplished, that the officers announce their authority and purpose because it certainly is true, although the business is open to the public, [that] the public is not invited to go into all areas of business, and they do need to announce [their] authority and purpose in order to actually conduct the search.
>
> I find in this case the evidence is that that announcement was accomplished; that the officers did upon entering—upon entering the foyer or waiting area announce that they were police officers and that they had a search warrant.

Ultimately it does not matter whether the doors at the street level and upstairs were wide open or only unlocked. In the case of a business holding itself open to the public, the police are not obliged to knock before entering any more than any other citizen would. *See United States v. Vargas,* 436 F.2d 1280, 1281 (9th Cir.1971) ("In our view, the thrust of section 3109 … is aimed at the closed or locked door"); *United States v. Morell,* 524 F.2d 550, 556–57 (2d Cir.1975). And, as the trial judge found, the police announced their identity upon entering.[9]

▮ Finally, appellant contends that the search was invalid because the warrant and return were not furnished to any of the occupants of the premises, as required by Super.Ct.Crim.R. 41(e)(4), but instead were left on the premises. Judge Wynn, unpersuaded by the government's argument that providing a copy of the warrant and return to the occupants was unnecessary since all were being arrested (hence they would have had limited opportunity to transmit the documents to the owners), concluded

---

erwise behaved differently than a paying customer would have.

**8.** A breaking means entering without permission. *Brooks v. United States,* 263 A.2d 45, 47 (D.C.1970).

**9.** Since we agree with the trial judge that the police did not have to knock on a door open to the public, we need not consider the separate issue whether "the prior lawful entry and continued presence of [Detective Gilkey by itself] vitiates any impropriety of subsequent entries."

*United States v. Bradley,* 455 F.2d 1181, 1186 (1st Cir.1972), *aff'd,* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973). Nor need we decide the issue, on which there is division among the federal courts, whether the requirements of 18 U.S.C. § 3109 do not apply at all to business establishments, *e.g., United States v. Francis,* 646 F.2d 251, 255 (6th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981), or whether—as the trial judge concluded—Super.Ct.Crim.R. 41(e)(3) is more restrictive in this respect than the federal statute.

that "leaving a copy of the warrant when [the police] left was not sufficient [under the rule]; ... these were not empty premises where the posting of the warrant takes the place of providing it to the occupant. I think that there was a violation." Assuming *arguendo* that this ruling was correct, we nonetheless agree fully with the judge that "there is nothing so egregious in the facts" presented here "to suggest ... that as a result the search should be invalid." Indeed, Rule 41(c)(4)'s purpose was partly satisfied when the police let one of the codefendants telephone "the associates of the business" to inform them of the search.

In a seminal decision discussing the sanction of exclusion of evidence for a violation of FED.R.CRIM.P. 41, Judge Friendly, speaking for the Second Circuit, concluded that

> violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*United States v. Burke,* 517 F.2d 377, 386–87 (2d Cir.1975) (footnotes omitted). Numerous courts have adopted the *Burke* test. *E.g., United States v. Martinez-Zayas,* 857 F.2d 122, 136 (3d Cir.1988); *United States v. Stockheimer,* 807 F.2d 610, 613 (7th Cir.1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987); *United States v. Pennington,* 635 F.2d 1387, 1390 (10th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *United States v. Searp,* 586 F.2d 1117, 1125 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979); *United States v. Burgard,* 551 F.2d 190, 193 (8th Cir.1977). We now do likewise, and hold that under neither of the *Burke* criteria was there reason to suppress evidence as a result of the assumed violation of the rule.

*Affirmed.*