**UNITED STATES of America**

v.

**Antoine WATTS, Defendant.**

**No. 09–cr–30030–MAP.**

United States District Court,
D. Massachusetts.

Sept. 9, 2010.

Alex J. Grant, Paul H. Smyth, U.S. Attorney's Office, Springfield, MA, for Plaintiff.

Myles Jacobson, Law Office of Myles Jacobson, Northampton, MA, for Defendant:

**MEMORANDUM AND ORDER RE-GARDING DEFENDANT'S MO-TION FOR DISCOVERY** (Docket No. 44)

PONSOR, District Judge.

## I. *INTRODUCTION*

Defendant, Antoine Watts, has been indicted on charges of conspiracy and possession with intent to distribute more than 5 grams—but less than 28 grams—of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1). Shortly after Defendant's indictment, the government filed an Information pursuant to 21 U.S.C. 851, seeking an enhanced statutory penalty on the basis of a prior felony conviction. As a result of this filing, the mandatory minimum sentence Defendant faces has increased from five years to ten years.

Defendant has moved for an order compelling the Government to assemble and disclose a range of data regarding the filing of 851 Informations in federal drug cases in the District of Massachusetts from 2007 through 2009. Defendant, who is African–American, asserts that this data is necessary to determine whether he is being selectively targeted for an enhanced penalty based on his race. Defendant seeks discovery to aid in determining whether to file a contemplated, but as-yet unfiled, motion to dismiss the 851 Information on equal protection grounds.

For the reasons summarized below, Defendant's motion for discovery will be denied.

## II. *DISCUSSION*

It is well established that Defendant's entitlement to the information he requests turns on his ability to produce "some evidence" tending to show both (a) discriminatory effect and (b) discriminatory intent attending the filing of the 851 Information in his case. *United States v. Armstrong,* 517 U.S. 456, 468, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). To make out this threshold showing, Defendant must adduce at least "some evidence that similarly situated defendants of other races could have been prosecuted, but were not," *id.* at 469, 116 S.Ct. 1480, and that the challenged prosecutorial decision was "at least in part because of, not merely in spite of," Defendant's race. *United States v. Lewis,* 517 F.3d 20, 25 (1st Cir.2008) (quoting *Wayte v. United States,* 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). Defendant's proffered evidence fails to cross this discovery threshold.

### A. *Discriminatory Effect.*

Defendant has collected and presented data showing, he alleges, that in 2009, 851–eligible, African–American defendants have had Informations filed in their cases at least twice as often as similarly situated[1] non-African–American defendants. According to Defendant's data, a total of fourteen federal drug defendants prosecuted by the Springfield, Massachusetts United States Attorney's Office in 2009 were 851–eligible. Of these defendants, seven were African–American and seven were either white or Hispanic. In the seven

---

1. The court finds unpersuasive the government's argument that, because Defendant was charged with a crack cocaine offense as part of a law enforcement initiative targeting a primarily African–American part of Springfield he is not, for present purposes, similarly situated to non-African-American defendants charged with heroin, powder cocaine, or other controlled substances offenses elsewhere in the city. *See United States v. Lewis,* 517 F.3d 20, 27 (1st Cir.2008) ("[a] similarly situated offender is one outside the protected class who has committed *roughly* the same crime under *roughly* the same circumstances ....") (emphasis added); *United States v. Tuitt,* 68 F.Supp.2d 4, 14 (D.Mass.1999) (cautioning against "convert[ing] the 'similarly situated' standard to an 'identically situated' one").

drug cases involving 851–eligible African–American defendants, the government filed Informations in five. In contrast, the government filed Informations in only two of the seven cases involving non-African–American, 851–eligible, drug defendants.

Although the pool from which Defendant draws his data is thin, the court will assume, for purposes of this motion, that the data provides "some evidence" that similarly situated defendants of other races have not been prosecuted by 851 Informations in the same way as African–American defendants. Accordingly, the court will assume that Defendant has met his threshold burden regarding discriminatory effect.

## B. *Discriminatory Intent.*

In support of his allegation of discriminatory intent, Defendant offers—in addition to the statistical data summarized above—a legion of surveys, studies, reports and policy statements, including productions of the Federal Sentencing Commission and the United States Attorney General, which Defendant argues demonstrate the "well known" reality that the federal crack cocaine laws, most notably the recently abandoned 100–1 crack/powder cocaine ratio incorporated into § 841(b), are ill-conceived and disproportionately impact African–Americans. (See Dkt. No. 56, Def.'s Reply to Government's Opp. To Def.'s Mot. For Discovery, 4–5.) *Accord Kimbrough v. United States,* 552 U.S. 85, 98, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (noting that "[a]pproximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100–to–1 ratio are imposed primarily upon black offenders" (internal citation and punctuation omitted)).

Defendant contends that this evidence bears on the element of intent, because the prosecutors' decision to file the Information in his case—against an African–American defendant charged with a relatively low-level, non-violent crack cocaine offense—must have been made with an awareness of the already disproportionate and severe impact mandatory minimum sentences based on the 100–1 crack powder have had on the African–American community. In short, Defendant argues that the exercise of discretion by the prosecution to file a § 851 Information, thereby doubling the minimum mandatory sentence faced by Defendant, provides a strong inference of *intent* to exacerbate other known adverse consequences of the federal crack cocaine laws on African–Americans.

"[W]hen the adverse consequences of a law upon an identifiable group are inevitable ..., a strong inference that the adverse effects were desired can reasonably be drawn." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279, note 25, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). When, however, "the impact is essentially an unavoidable consequence of a legislative policy that has in itself always been deemed to be legitimate, and when ... the statutory history and all of the available evidence affirmatively demonstrate the opposite, the inference simply fails to ripen into proof." *Id.*

Although Defendant has offered much evidence that the 100–1 crack to powder ratio under which he has been charged was ill-conceived, unwise, and has often led to unfair consequences, a conclusion shared by this court, the Supreme Court, and the Sentencing Commission, and bolstered by Congress's recent amendments to the law,[2] the court is simply not in the

2. *See* Fair Sentencing Act of 2010, Pub.L. No. 111–220 (July 28, 2010) (narrowing the disparity to 18 to 1).

position to assume that this ratio was "illegitimate" in the constitutional sense, such that its enforcement, alone or in conjunction with a § 851 Information, evinces an intent by prosecutors to discriminate against this Defendant on the basis of his race. It is significant that the constitutionality of the statute, though often challenged, has been repeatedly upheld. *See United States v. Singleterry,* 29 F.3d 733 (1st Cir.1994) (rejecting claims that disparate sentences for crack and powder cocaine distribution were unconstitutional because of their disproportionate effect on African–Americans); *United States v. Campbell,* 388 Fed.Appx. 570, 572–73, 2010 WL 2982817, *2, 2010 U.S.App. LEXIS 15802, 6 (8th Cir. Neb. July 30, 2010) (same); *United States v. Samas,* 561 F.3d 108, 110 (2d Cir.2009) (noting that "[n]othing in *Kimbrough* suggests that the powder to crack cocaine disparity in § 841(b)is unconstitutional").[3] Moreover, there is nothing in the record demonstrating that the 100-to-1 ratio, however unwise, was intentionally devised to achieve the collateral goal of punishing African–Americans disproportionately. *See Singleterry,* 29 F.3d at 741. Accordingly, the inference described in *Feeney* cannot be drawn in this case.

While the court finds that Defendant has not met his burden with regard to discriminatory intent, his motion has brought to the court's attention another troubling issue requiring comment: the shocking disparity in the filing of 851 Informations in 2009 Massachusetts drug cases between the Western Division and the rest of the District of Massachusetts. Defendant's data suggests that, in 2009, a defendant indicted for drug offenses in the Western

Division was fifteen times more likely to have an Information filed in his case than a defendant indicted in the Worcester and Boston offices *combined.* The government does not dispute this data, rather stating that a policy directive from the previous administration had directed them to routinely file an 851 whenever a defendant was 851 eligible. (Dkt. No. 53, Opp. to Mot. for Discovery, 11.) The court finds this policy to be inexplicable and, in the context of the facts at hand, disturbingly arbitrary. No justification the court can conceive would explain singling out crack cocaine defendants in the four counties of Western Massachusetts for harsher treatment than similar defendants in the rest of the state.

Putting this concern aside, however, the court must conclude that an insufficient showing has been made to justify requiring the government to produce the requested discovery.

### III. *CONCLUSION*

For the foregoing reasons, Defendant's Motion for Discovery, (Dkt. No. 44), is hereby DENIED. The clerk will set this case for a prompt status conference.

It is So Ordered.

---

**3.** In this way, this case is distinguishable from *United States v. City of New York,* 683 F.Supp.2d 225 (E.D.N.Y.2010), cited by Defendant, where discriminatory intent was inferred from the continued use of hiring policies that had *twice been judicially declared illegal. Id.* at 262.