**UNITED STATES of America,**

v.

**Nathaniel HODGES, Defendant.**

**Case No. 1:10–CR–2 (WLS).**

United States District Court,
M.D. Georgia,
Albany Division.

Feb. 17, 2011.

Leah E. McEwen, Albany, GA, for United States of America.

Bruce Steven Harvey, Atlanta, GA, for Defendant.

SANDS, District Judge.

Before the Court is Defendant's Motion for Declaratory Judgment that Fair Sentencing Act of 2010 Applies to Defendant (hereinafter "Motion for Declaratory Judgment"). (Doc. 51). For reasons more fully explained below and held at Defendant's February 10, 2011 sentencing hearing, the Court **GRANTS** Defendant's Motion for Declaratory Judgment (Doc. 51).[1]

## RELEVANT PROCEDURAL HISTORY

Defendant was arrested September 10, 2009, for drug possession and distribution charges. A Drug Enforcement Agency laboratory analysis later revealed that the total weight of the crack cocaine the officers seized during their arrest of Defendant was 8.3 grams. (Doc. 29–2). On February 10, 2010, Defendant was charged in a two-count Grand Jury Indictment with Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(C). (Doc. 1).

Defendant filed a Motion to Suppress on March 15, 2010 (Doc. 11) and an Amended Motion to Suppress on March 23, 2010 (Doc. 28). Defendant filed the instant Motion for Declaratory Judgment (Doc. 51) on September 10, 2010, to which the Government responded on September 16, 2010 (Doc. 53). Approximately a month later, on October 12, 2010, the Court denied Defendant's Motion to Suppress and Amended Motion to Suppress. (Doc. 60). On October 14, 2010, Defendant pled guilty to Count One of the Indictment for violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). (Docs. 61, 62). The Court subsequently granted the Government's Motion to Withdraw Sentence Enhancement Information (Doc. 63), which it filed as part of Defendant's plea agreement. (Doc. 64).

Defendant thereafter filed an Amendment to Defendant's Motion for Declaratory Judgment on October 26, 2010 (Doc. 66), to which the Government did not respond. (*See generally* Docket). On December 1, 2010, Defendant filed a Third Supplement to Defendant's Motion for Declaratory Judgment (Doc. 69) and on January 13, 2011, a Fourth Supplement to Defendant's Motion for Declaratory Judgment (Doc. 70). The Government filed a response to the December 1, 2010 Third Supplement and the January 13, 2011 Fourth Supplement on February 3, 2011. (Doc. 71).

Before the Court is able to determine that Defendant's case is ripe for sentencing, it first must resolve Defendant's Motion for Declaratory Judgment (Doc. 51). This requires the Court to consider and rule on the following issue: whether the Fair Sentencing Act of 2010 (hereinafter "FSA" or "Act"), although silent as to its retroactivity, applies to individuals like Defendant whose offending behavior occurred prior to the FSA's August 3, 2010 effective date, but who pleaded guilty and were

---

1. The Court orally issued this ruling at Defendant's sentencing hearing on February 10, 2011, and provided the Government and Defendant an opportunity to respond thereto. The Court further stated that it would issue a written order to the effect of its oral ruling

and findings, in light of the brief reasoning it provided at the hearing. Accordingly, the Court now commits the oral ruling and reasoning from Defendant's February 10, 2011 sentencing to writing in the instant Order.

sentenced after the Act's effective date and issuance of the related U.S. Sentencing Commission Emergency Amendments to the Sentencing Guidelines, or whether the penalty provisions prior to August 3, 2010, apply. Under the FSA, Defendant's possession of and intent to distribute 8.3 grams of crack cocaine would be insufficient to subject him to the mandatory minimum penalty provisions of 21 U.S.C. § 841(b)(1)(B)(iii). *See* 21 U.S.C. § 841(b)(1)(B)(iii). However, such conduct would be sufficient to subject him to the harsher statutory penalty provisions in effect at the time of Defendant's offending behavior and prior to the FSA, which require a prison term of no less than five years for a quantity of five grams or more of crack cocaine. *See* Controlled Substances Act, 21 U.S.C 841(b)(1)(B)(iii) (2008), *amended by* Fair Sentencing Act § 2. To determine under which penalty provision Defendant's conduct should fall in view of his plea and sentencing dates, the Court begins with a discussion of the FSA's background and its interpretation by the federal courts.

### DISCUSSION

### I. Background: The FSA and its Interpretation by Federal Circuit and District Courts

The Fair Sentencing Act of 2010, signed into law on August 3, 2010, by President Barack Obama, is the result of a decades-long effort to change the sentencing disparity between crack and powder cocaine.[2] *United States v. Lewis*, 625 F.3d 1224, 1227–28 (10th Cir.2010) (explaining U.S. Sentencing Commission's repeated attempts to achieve reduction in crack/powder ratio after determining that disparity was unwarranted and Congress's repeated

rejection of proposed sentencing guideline amendments); *see also United States v. Douglas*, 746 F.Supp.2d 220, 222–23, No. 09–202–P–H, 2010 WL 4260221, *2 (D.Me. Oct. 27, 2010) ("[T]he factual premises for the severe differential came into question, and increasing attention was directed to significant racial disparities that it produced in federal drug sentencing."). In response to the criticism of the sentencing disparity, Congress took action by enacting the FSA, which is described in the Preamble as "restor[ing] fairness to Federal cocaine sentencing." FSA of 2010, pmbl., Pub.L. No. 111–220, 124 Stat. 2372, 2372 (codified as amended at 21 U.S.C. § 841(b)(1)(B)(iii) (2010)).

In line with this goal of fairness, the FSA amends the penalty provisions of 21 U.S.C. § 841 by increasing the total amount of crack cocaine necessary to trigger mandatory five-year sentences from five to twenty-eight grams or more, and ten-year sentences from fifty to two-hundred-eighty grams or more. FSA § 2(a)(1)-(2). This amendment, in effect, reduces the crack cocaine-powder cocaine sentencing ratio from 100–to–1 to 18–to–1. *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir.2010).

Despite the clarity of Congress's purpose in enacting the FSA, whether the FSA applies retroactively to crimes committed before the FSA's enactment in cases where the defendant pleaded guilty after its enactment and has not yet been sentenced is unclear. The Act says nothing specifically about the categories of offenders to whom it applies. As one federal district court judge notes, the statute's applicability is not directed to those who have not yet offended; to offenders not yet

---

**2.** As noted by the Supreme Court in *Kimbrough v. United States*, 552 U.S. 85, 95, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the effect of this disparity is that a "major supplier of

powder cocaine may receive a shorter sentence than a low-level dealer who buys powder from the supplier but then converts it to crack."

convicted; or to offenders convicted but not yet sentenced. *Douglas,* 746 F.Supp.2d at 221–22, 2010 WL 4260221, *1. Consequently, federal courts have reached different results on the issue of the FSA's retroactivity.

Each federal circuit that has faced the issue of the applicability of the FSA to defendants whose offending behavior occurred prior to the FSA's enactment has held that the Act is not retroactive. For example, in appealing his sentence before the Eleventh Circuit, the defendant in *Gomes* argued that his ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(iii) (2008), the pre-FSA law, was "greater than necessary to achieve the goals of sentencing set out in 18 U.S.C. § 3553(a)" and was therefore "unreasonable and unwarranted." 621 F.3d at 1345. In addition to relying on Supreme Court decisions that permit district courts to reject the disparity created by the Sentencing Guidelines' 100:1 crack-to-powder cocaine ratio, the defendant supported his argument with the recently passed FSA. *Id.* (citations omitted). The Eleventh Circuit, however, affirmed the ten-year sentence under the pre-FSA penalty regime. Not only did the Court find that the defendant did not qualify for a safety-valve exception under 18 U.S.C. 3553(f) and that the Government did not file the proper motion under 18 U.S.C. 3553(e) to allow the court to sentence the defendant below the mandatory minimum, it also added that because the FSA took effect after the defendant committed his crimes, the general Savings Clause at 1 U.S.C. § 109 barred the FSA from affecting the defendant's punishment.[3] *Id.* at 1346. Relying

on *Gomes,* the Eleventh Circuit in *United States v. Coleman* similarly held that " § 109 dictates that [the defendant] is not entitled to be resentenced under the FSA's less severe penalty provisions." Nos. 10–11541, 10–11658, 2011 WL 396473, *2 (11th Cir. Feb. 8, 2011) ("In *Gomes,* [a decision we are now bound to follow in this case,] we noted that § 109 barred the FSA from applying retroactively because the defendant in that case committed his crimes before the FSA took effect."); *see also United States v. Bradley,* No. 10–11639, 409 Fed.Appx. 308, 310–11, 313, 2011 WL 169228, *2, *5 (11th Cir. Jan. 20, 2011) ("*Gomes* . . . made clear that the amendments in the Fair Sentencing Act do not apply to crimes committed before the FSA['s] . . . enact[ment].").

Other federal circuits that have decided this issue of the applicability of the FSA have denied relief under the FSA based on identical reasoning from the *Gomes* decision. *See United States v. McAllister,* No. 10–4387, 401 Fed.Appx. 818, 820 n. *, 2010 WL 4561395, *2 n. * (4th Cir. Nov. 12, 2010) ("[T]he FSA did not expressly provide that those amendments apply retroactively. Thus, despite the enactment of the FSA, the district court at sentencing had to apply the penalties in effect in 2009 when McAllister committed the instant offense." (citing Savings Clause)); *see also Lewis,* 625 F.3d at 1228 ("[The FSA] is not . . . retroactive and thus does not apply to this case."); *United States v. Glover,* No. 09–1725–cr, 398 Fed.Appx. 677, 680, 2010 WL 4250060, *2 (2d Cir. Oct. 27, 2010) ("The [FSA] contains no express statement that it is intended to have retroactive ef-

---

**3.** In a letter to the Court, Defendant argues, for reasons previously stated in his Motion, that this portion of the *Gomes* holding is dicta. Letter from Bruce S. Harvey, Attorney for Defendant Nathaniel Hodges, to the Honorable W. Louis Sands, District Court Judge, U.S. District Court for the Middle District of Georgia (Oct. 4, 2010) (on file with Clerk of Court). At Defendant's February 10, 2011 sentencing hearing, the Government objected to Defendant's argument that *Gomes* is dicta, asserting that it is in fact binding precedent with respect to the application of 1 U.S.C. § 109.

fect nor can we infer such intent from its language." (citing Savings Clause)); *United States v. Bell*, 624 F.3d 803, 814 (7th Cir.2010) ("[W]e conclude that the savings statute operates to bar the retroactive application of the FSA."); *United States v. Brown*, No. 10–1791, 2010 WL 3958760, at *1 (8th Cir. Oct. 12, 2010) (per curium) ("[T]he amendment was not made retroactive.... Thus the statutory minimum existing at the time the offense was committed governs." (citing Savings Clause)); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir.2010) ("The 'general savings statute,' ... requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application. The FSA ... contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question." (citations omitted)).

In following their circuit precedent or that of other circuits, many federal district courts have ruled that the FSA is not retroactive. *See United States v. Wagoner*, No. 88–93(3), 2010 WL 4363429, *1 (D.Minn. Oct. 29, 2009) ("[B]ecause the Fair Sentencing Act contains no express language that it is retroactive, 'the statutory minimum existing at the time the offense was committed governs.'" (citations omitted)); *United States v. Butterworth*, No. 96–62–P–H, 2010 WL 4362859, *1 (D.Me. Oct. 27, 2010) ("The overwhelming weight of authority is against applying the [FSA] to those *already sentenced*, let alone those whose sentences are already final." (emphasis added) (citations omitted)); *Bingham v. United States*, Nos. CV 10–2596, CR 91–770, 2010 WL 4220219, *3 (C.D.Cal. Oct. 19, 2010) ("[P]ersuaded by the reasoning of these cases [in the other federal circuits noting that the FSA does not contain an express statement of retro-

activity, the Court] ... finds that the Fair Sentencing Act should not be applied retroactively to petitioner."); *United States v. Ohaegbu*, No. 6:92–cr–35–Orl–19 PAUL, 2010 WL 3490261, *2 (M.D.Fla. Aug. 31, 2010) (finding no authority or evidence in text or legislative history of FSA 2010 supporting defendant's argument that FSA applies retroactively); *United States v. King*, No. 6:04–cr–46–Orl–19GJK, 2010 WL 3490266, *2 (M.D.Fla. Aug. 31, 2010) (same).

A few district courts, on the other hand, have either held or insinuated that the FSA is retroactive, at least in certain circumstances. For example, a federal district court in the First Circuit, which ironically also rejected the retroactivity of the FSA in a separate case, *see Butterworth*, 2010 WL 4362859, *1, held that the FSA should be retroactively applied, *see Douglas*, 746 F.Supp.2d at 221–22, 2010 WL 4260221, *1. Relying on legislative intent; the ex post facto clause and the Savings Clause of the U.S. Constitution; and the Sentencing Reform Act of 1984, among other sources, the court in *Douglas* concludes that the FSA *"does apply* to a defendant who has *not yet been sentenced,* but who engaged in crack cocaine trafficking and pleaded guilty under the previous harsher regime." *Douglas,* 746 F.Supp.2d at 221, 2010 WL 4260221, *1 (emphases added). That court justifies a holding different from that of the federal circuits and other district courts based on the timing of the defendant's sentencing in relation to the enactment of the FSA. *Id.* at 224–26, at *3. *Douglas* notes that the courts that have refused to apply the FSA to criminal conduct occurring before August 3, 2010, pursuant to the Savings Clause, did so because the defendants were sentenced *prior to* August 3, 2010, whereas the defendant in *Douglas* had not yet been sentenced. *See id.* at 225 n. 28, at *3 n. 28 (citing *Bell,* 624 F.3d at 814–15; *Brown,*

2010 WL 3958760, at *1; *Gomes*, 621 F.3d at 1346; *Carradine*, 621 F.3d at 580; *United States v. Millhouse*, No. 7:04–CR–85–F3, 2010 WL 4338383, at *2, 2010 U.S. Dist. LEXIS 112988, at *6 (E.D.N.C. Oct. 22, 2010); *United States v. Jones*, No. 08–40, 2010 U.S. Dist. LEXIS 110423, at *3 (W.D.Pa. Oct. 18, 2010); *United States v. Hughes*, No. 07–33, 2010 WL 3982138, at *3 (W.D.Wis. Oct. 8, 2010); *Ohaegbu*, 2010 WL 3490261, at *1–2).

In a more recent case before the Northern District of Georgia relying on *Douglas*, the court similarly reasoned that this difference between the procedural posture of the case before it and that of *Gomes* and other Eleventh Circuit decisions refusing to apply the FSA to defendants sentenced prior to the FSA's enactment, supported its decision to apply the FSA to the defendants who had not yet been convicted and sentenced. *United States v. Elder*, No. 1:10–CR132, 2011 WL 294507, *2 (N.D.Ga. Jan. 27, 2011). *Douglas* has also led an Arkansas district court to doubt and consequently, suspend the pre-FSA ten-year mandatory minimum sentence it imposed after the FSA's enactment against a defendant who committed his offenses and pled guilty prior to the FSA's enactment. *United States v. Watson*, No. 4:09–CR–00055 GTE, 2010 WL 4507374, *1 (E.D.Ark. Nov. 2, 2010) (noting its provi-

sion of copies of *Douglas* to counsel for purposes of informing court of parties' opinion regarding applicability of FSA to defendant).

A review of these decisions indicates that the Court must decide the applicability of the FSA to defendants whose offending behavior occurred prior to the enactment of the FSA, but who were convicted (in the instant case, pleaded guilty) after its enactment and have not yet been sentenced. Because the Savings Clause primarily governs the majority of these decisions,[4] it, as well as rules and principles of statutory construction, guides the Court's analysis of this issue.

## II.  *Analysis*

### a.  *The General Savings Clause and Congressional Intent*

■ Given the FSA's silence on its retroactive application to defendants not yet sentenced, Defendant first argues that the Court's resolution of the current dispute as to Defendant's sentencing depends on Congress's intent. (Doc. 51 at 3, 11). In line with this reasoning, Defendant argues that there is no legislative purpose in applying the law prior to the existence of the FSA, for its application contravenes the purpose behind the enactment of the FSA to restore fairness to cocaine sentencing.

---

4.  Another basis of Defendant's Motion for Declaratory Judgment is his argument that the general presumption against retroactivity does not apply to ameliorative changes in federal criminal law such as the FSA. (Doc. 51 at 9–10 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994))). The Government's opposition to Defendant's Motion for Declaratory Judgment also focuses, in part, on this presumption against retroactivity, which it argues the FSA's express language does not overcome in order to apply the FSA to Defendant's sentencing. (Doc. 53 at 2 (quoting *United States v. Mayfield*, 999 F.2d 1497, 1500 (11th Cir.1993))). The Court, however, holds

that this general retroactivity analysis is not necessarily controlling and at issue in this case given the narrow issue to which the facts of Defendant's case have given rise—i.e., whether to apply the FSA to defendants whose offending conduct occurred prior to the FSA's enactment but who have not been sentenced. This issue does not require the Court to delve into a full retroactivity analysis, as a retroactive application of the FSA in a general sense would apply to *all pre-FSA cases*, including those in which defendants were sentenced prior to the FSA's enactment, which, as discussed below, is most probably not a congressionally intended application of the FSA.

(*See id.* at 3). As a result, Defendant proposes two "exceptions" to the Savings Clause that he argues requires the Court to apply the FSA to his case: either where the law (1) undermines a constitutional provision that gave rise to its appeal or (2) serves no legitimate purpose. (*Id.* at 3–4 (citing and quoting *Hamm v. City of Rock Hill,* 379 U.S. 306, 317, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964); *United States v. Chambers,* 291 U.S. 217, 226, 54 S.Ct. 434, 78 L.Ed. 763 (1934))). He argues that these exceptions bar the Savings Clause from preserving the superseded criminal penalty provisions and therefore require the FSA to retroactively apply to him in determining his sentence. *Id.*

As to the first exception concerning the constitutional backdrop of the FSA's enactment, Defendant states that application of the penalty provisions in effect prior to the enactment of the FSA violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. (*Id.* at 4 (citation omitted)). Defendant states that Congress members legislated the FSA to conform to the Equal Protection Clause of the Constitution. (*Id.* at 9). Thus, principles of equal protection, according to Defendant, require ameliorative changes in criminal laws such as the FSA to apply to cases pending at the time of the change. (*Id.* at 5). Otherwise, Defendant maintains that "the application of the old ... [sentencing] ratio would extend the very equal protection violation that the Act sought to forestall." (*Id.* at 9). Accordingly, the Savings Clause, Defendant contends, cannot stand in the way of equal protection principles, as it must be interpreted in light of the Equal Protection Clause, which requires the Court to apply the FSA in Defendant's case. (*Id.* at 18, 19). The Government's response is that federal courts, including the Eleventh Circuit, have ruled that the sentencing disparity between crack and powder cocaine offenses cannot violate the Equal Protection Clause. (Doc. 53 at 7 (citing *United States v. McClendon,* 379 Fed.Appx. 898 (11th Cir.2010); *United States v. Watts,* 736 F.Supp.2d 332 (D.Mass.2010))).

The Court agrees with the Government regarding Defendant's first proposed constitutional "exception" to the Savings Clause. First, the Eleventh Circuit has specifically held, as the Government notes, "that the sentencing disparity between crack cocaine and powder cocaine offenses does not violate the Equal Protection Clause, even though the statute has a disparate impact." *McClendon,* 379 Fed. Appx. at 901 (citing *United States v. Butler,* 102 F.3d 1191, 1194–95 (11th Cir. 1997)). Thus, any application of the pre-FSA sentencing disparity to Defendant does not violate the Equal Protection Clause so as to render the Savings Clause inapplicable.

Second, the cases on which Defendant builds his argument surrounding this first proposed exception to the Savings Clause are inapposite in the current case. *Hamm,* 379 U.S. at 314, 85 S.Ct. 384, concerns the *substitute of a crime for right* through the enactment of the Civil Rights Act of 1964, and *Chambers,* 291 U.S. at 224, 54 S.Ct. 434, concerns the American people's *decriminalization* of an act through the ratification of the Twenty-first amendment of the U.S. Constitution. The Supreme Court's construction and classification of these laws led it to refuse to apply the Savings Clause in both cases. The current case, however, is factually distinct from *Hamm* and *Chambers,* as the FSA addresses the reduction of penalties imposed against a defendant for a specific crime through a statutory amendment. Moreover, in this case, unlike in *Chambers,* a criminal defendant's conviction remains unchanged under the FSA amendment because it only addresses a defendant's sentencing and not the criminal sanction of his

conduct. Accordingly, the FSA is unlike the laws at issue in *Hamm* and *Chambers,* as it does not substitute a crime for a right, nor does it decriminalize an act.

▮ With regard to Defendant's second proposed "exception" to the Savings Clause, Defendant explains that several sponsors of the FSA acknowledged that the preservation of the pre-FSA penalty provisions serve no legislative purpose. (Doc. 51 at 6–7 (citing 155 Cong. Rec. S10488–01 (daily ed. Oct. 15, 2009))). Such an observation among Congress members, Defendant notes, was largely based in the lack of a "pharmacological distinction" between crack and cocaine and the disparate impact of the sentencing disparity on minorities. (*Id.*). Additionally, Defendant also argues that the Senate's and House's passage of bill S. 1789 in support of the FSA by a unanimous vote evidences congressional support for the obsoleteness of the old sentencing law from the date of FSA's enactment. (*Id.* at 7 (citation omitted)).

In response, the Government asserts that the general Savings Clause, 1 U.S.C. § 109, supports Congress's intent for the FSA to not be retroactive, preserves harsher sentencing under pre-FSA penalty provisions, and therefore bars the application of the FSA to cases like Defendant's. (Doc. 53 at 2–3 ("[The Savings Clause] was to prevent courts from imputing to Congress an intent which Congress never intended." (citing *Great N. Ry. Co. v. United States,* 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567 (1908)))). In support of this assertion, the Government distinguishes the facts of the present case from the facts of cases cited by Defendant. To illustrate, the Government explains that Congress's enactment of the FSA only addresses varying degrees of criminality, much like the statute in *Bradley v. United States,* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), while the cases Defendant cites

concern the decriminalization of conduct and creation of rights by newly enacted federal statutes and a federal constitutional amendment. (*Id.* at 4, 5–6 (distinguishing *Hamm* and *Chambers* from Defendant's case, while analogizing Defendant's case to *Bradley,* which the Government explains required specific saving provision of newly enacted statute and general Savings Clause to preserve older penalty provision in effect at time of offense)). The Government asserts that this factual distinction requires the Court to respect Congress's choice to not make the FSA retroactive and to apply the general Savings Clause. (*Id.* at 3, 6).

The Court agrees with the Government that § 109 merits significant discussion in analyzing Defendant's Motion for Declaratory Judgment. Yet, it does not find that § 109 saves the pre-FSA penalty provisions. Instead, the Court agrees with Defendant's argument concerning the second so-called exception to the Savings Clause, but it reaches this decision not based on any actual express "exception" to the Savings Clause. The Court's analysis primarily relies on legislative intent.

The general Savings Clause provides, in relevant part: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, *unless* the repealing Act shall so *expressly provide,* . . . ." 1 U.S.C. § 109 (emphases added). In effect, the statute prohibits the abatement or elimination of all prosecutions, which includes the sentencing stage, that have not reached final disposition; penalties; or liability by the repeal of a statute, unless the statute expressly provides otherwise. *Bradley,* 410 U.S. at 611, 93 S.Ct. 1151. In addition to applying the general Savings Clause, statutes often contain their own savings clause that specifically preserves harsher statutory penalties for

sentencing imposed in the future. *See, e.g., Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 657–58, 661, 663, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) (holding that savings provision of Comprehensive Drug Abuse Prevention and Control Act *and* general Savings Clause preserved prohibition on parole eligibility).

Congress enacted its first general saving provision in 1871 to abolish the common law presumption that the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them. *Marrero,* 417 U.S. at 659, 94 S.Ct. 2532; *see also Bradley,* 410 U.S. at 607, 93 S.Ct. 1151 (citing *Bell v. Maryland,* 378 U.S. 226, 230, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964)); *Norris v. Crocker,* 13 How. 429, 14 L.Ed. 210 (1852). Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals and re-enactments with different penalties. *Marrero,* 417 U.S. at 660, 94 S.Ct. 2532. Consequently, to avoid such abatements, Congress enacted 1 U.S.C. § 109. *Id.* Functionally, therefore, the Savings Clause "express[es] legislative intention to preserve the designated expectancies, rights, or obligations [of older laws] from immediate destruction or interference [by newer repealing laws]." *See* Millard Ruud, *The Savings Clause: Some problems in Construction and Drafting,* 33 Tex. L.Rev. 285, 286 (1955). Such a function helps to avoid the disruption that will likely result from the transition from an old law to the repealing one. *Id.*

However, as noted by the Supreme Court in 1908, "[the Savings Clause] cannot justify disregard of the will of Congress, as manifested either *expressly* or by *necessary implication,* in a subsequent enactment." *Great N. Ry. Co.,* 208 U.S. at 465, 28 S.Ct. 313.[5] The Supreme Court later confirmed this principle in a 1974 decision by explaining that the repealing statute can only supersede the Savings Clause if the two conflict with each other in fulfilling the intent of the legislative body that enacted the repealing law. *See Marrero,* 417 U.S. at 660 n. 10, 94 S.Ct. 2532. *Cf. United States v. Kolter,* 849 F.2d 541, 545 (11th Cir.1988) (reasoning that 1 U.S.C. § 109 did not apply to save old definition of "convicted felon" under 18 U.S.C. § 1202(a) because general Savings Clause was not intended to result in frustration of congressional intent). Accordingly, where § 109 results in a frustration of congressional intention, it should not apply.

Following this reasoning, this Court is therefore required to determine the extent to which the FSA operates to prevent sentencing under the pre-FSA penalty provisions for offenses committed prior to the date of the FSA's enactment by defendants who were convicted after the enactment of the FSA and who have not yet been sentenced. That is, the Court must decide whether the requirement to sentence defendants under the pre-FSA penalty provisions for offenses committed before the effectiveness of the FSA was *"lost by reason"* of Congress's enactment of the

---

5. The Court further elaborated on the meaningless of the Savings Clause that arises in the face of a conflict between a repealed law and the congressional intent behind the enactment of the repealing law:

> [T]he provisions of [the Savings Clause] are to be treated as if incorporated in and as part of the subsequent enactments, and therefore under the general principles of construction requiring ... that effect be

given to all the parts of a law, the section must be enforced *unless, either by express declaration or necessary implication,* arising from the terms of the law as a whole, *it results that the legislative mind will be set at naught by giving effect to the provisions of [the Savings Clause].*

*Great N. Ry. Co.,* 208 U.S. at 465, 28 S.Ct. 313 (emphases added).

FSA. *See Great N. Ry. Co.*, 208 U.S. at 465, 28 S.Ct. 313. This analytical framework compels the Court to read the general Savings Clause, the pre-FSA penalty provisions, and the FSA together.

Based on the foregoing, the Court notes that although the FSA does not explicitly state that the general Savings Clause should not preserve, or that the FSA should abate, the prior crack cocaine sentencing for defendants who offended prior to the FSA's enactment but who have not been sentenced, the FSA permits this retroactive effect by way of *congressional express declaration* or *necessary implication.* Section 8 of the FSA mandates the U.S. Sentencing Commission (hereinafter "USSC" or "Commission") to "promulgate . . . as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act, . . . *conforming* amendments to the Federal sentencing guidelines . . . [that are] *necessary to achieve consistency* with other guideline provisions and applicable law." FSA, Pub.L. No. 111–220, § 8(1)-(2), 124 Stat. 2372, 2374 (emphases added).

In response to this mandate, the USSC issued amended emergency guidelines, effective November 1, 2010, that reduce the base offense levels for various quantities of crack cocaine. Temporary Emergency Amendment to Sentencing Guidelines and Commentary, 75 Fed.Reg. 66,188, 66,189 (Oct. 27, 2010). Consequently, many defendants convicted under 21 U.S.C. § 841(b)(1)(B)(iii) who are sentenced after November 1, 2010, will receive the benefit of these guidelines amendments, as applied, and should do so regardless of whether their offending behavior occurred before or after August 3, 2010. If such defendants do not receive this benefit in sentencing, as noted by *Douglas,* "[i]t would be a strange definition of *'conforming'* and *'consistency'* to have these new amended Guidelines go into effect while

the old and therefore inconsistent statutory minimums continue." *See* 746 F.Supp.2d at 229 & n. 47, 2010 WL 4260221, *5 & n. 47 (emphases added) (explaining that Guidelines amendments adopted for the past two decades have applied to all defendants sentenced thereafter, regardless of when the crime was committed, based on Sentencing Reform Act of 1984's mandate, as noted in Guidelines commentary, U.S.S.G. § 1B1.11 (Background Note), that Guidelines are those in effect on day of sentencing). Application of § 109 would therefore result in the older, harsher sentence, notwithstanding a determination of the sentencing guidelines range under the post-FSA guidelines.

In line with its intent to restore fairness to crack cocaine sentencing after the FSA's enactment, the Court reasons that Congress instructed the USSC to issue the emergency guidelines amendments to account for and immediately ensure the effectiveness of the sentencing changes in § 841(b)(1)(B)(iii). The emergency guidelines amendments' commentary reflects this: "[U]sing the new drug quantities established by the [FSA] . . . ensures that the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." 75 Fed.Reg. 66,-188, 66191. Accordingly, the Court reasons that the FSA, like the emergency guidelines amendments, should apply to offenders convicted and sentenced after November 1, 2010, even if those offenders committed their offenses before August 3, 2010. Such a conclusion seems obvious since Congress has given no indication in the FSA that it was distinguishing the emergency guidelines amendments that it expressly mandated from the statutory sentencing floors from

which they directly flow.[6] *See Douglas,* 746 F.Supp.2d at 230–31, 2010 WL 4260221, *6 (quotation marks omitted).

No other interpretation as to the retroactive application of the FSA seems plausible. If the Court were to accept the Government's position, it would be required to sentence defendants a year or more from now under the old pre-FSA penalties for criminal conduct committed prior to the enactment of the FSA, while simultaneously sentencing defendants for post-August 3, 2010 conduct to substantially lower sentences. This would be an illogical result in light of Congress's mandate to the Commission to issue *emergency* guidelines—which became effective November 1, 2010—and the legislative history behind the FSA to restore fairness to crack cocaine sentencing.

In introducing S. 1789, Senator Richard Durbin indicated his intent to "do away with th[e] disparity" created by the Anti–Drug Abuse Act of 1986, given the disrespect it bred for the criminal justice system in terms of *justice*—by disproportionately impacting African Americans—and *cost*—by diverting resources away from the prosecution of large-scale drug traffickers. *See* 155 Cong. Rec. S10488–01,

S10491 (daily ed. Oct. 15, 2009) (statement of Sen. Durbin). Senator Patrick Leahy, another sponsor of the FSA, discussed his hope that the FSA "legislation will ... make our drug laws more fair, more rational, and more consistent with our core values of justice" because there was no legitimate basis for the difference in sentencing crack dealers and users and cocaine dealers and users. *See id.* at S10492 (statement of Sen. Leahy). These statements, among others, as well as the clear purpose of the Act, indicate Congress's desire for an immediate application of the FSA to cases like Defendant's, to address the unjust, unfair sentencing regime created by the Anti–Drug Abuse Act of 1986.[7]

The Court would reach a different result had Defendant moved to reduce a sentence imposed against him prior to the enactment of the FSA because Congress, without comment to that effect, presumably would not have wanted a large number of previously sentenced offenders to be immediately released from prison under the FSA. But because Defendant has not yet been sentenced, the Court must interpret the FSA, as well as the general Savings Clause, in light of Congress's basic policy

---

6. Also noteworthy is several district courts' intimation to retroactively apply the FSA in the near future based on the FSA's grant of this emergency authority to the USSC, despite their decision that the occurrence of the offending behavior prior to the FSA's enactment bars the retroactive application of the FSA. *See, e.g., United States v. Lundy,* No. 1:04–CR–84, 2010 WL 4316875, *3 n. 1 (N.D.Ind. Oct. 25, 2010). These cases note that defendants may be entitled to a sentence modification under the FSA based on the USSC's issuance of emergency amendments to the guidelines that lower the sentencing range on which defendants' sentences are based. *See, e.g., id.; see also United States v. Norris,* No. 1:07–CR–77–TLS, 2010 WL 4339275, *2 n. 2 (N.D.Ind. Oct. 27, 2010) ("If the Sentencing Commission promulgates a sentencing guideline amendment [under the

FSA] that applies to the Defendant's sentence, he may be entitled to seek a modification...."). Following these courts' rationale, the Court finds that offenders like Defendant now facing sentencing should be entitled to receive the benefit of the reductions in the guidelines *and* under the FSA because the USSC since these decisions has acted on this emergency authority by issuing amendments that took effect on November 1, 2010.

7. Since their sponsorship of the FSA and its enactment, Senators Leahy and Durbin have even urged U.S. Attorney General Eric Holder to apply the FSA to cases similar in posture to Defendant's case (i.e., where the defendant is sentenced after the enactment of the FSA for pre-FSA conduct). (*See* Doc. 69, Ex. A at 5–6).

concerns and goals in enacting the FSA: to target the most serious drug offenders trafficking major quantities of drugs into communities, not individuals like Defendant, who have pleaded guilty to 21 U.S.C. § 841(b)(1)(B)(iii) based on their possession of smaller quantities of crack cocaine that do not qualify them for minimum mandatory sentences under the FSA. *See id.* (statement of Sen. Leahy) (explaining target group of offenders for sentencing under FSA). It follows that the implied, if not express, legislative intent behind the FSA therefore reigns supreme over the intent of the Savings Clause to preserve designated expectancies, rights, or obligations under the pre-FSA penalty provisions, as the Savings Clause's application to the FSA in the current case—i.e., where a defendant was convicted after enactment of the FSA and has not yet been sentenced—would render naught the 2010 Congress's intent in enacting the FSA, giving it immediate effect, and thus, providing for fairer sentencing.

Also of some import to the Court's decision to not give effect to the Savings Clause is the absence of a specific saving provision within the FSA. This absence distinguishes the FSA from the statutes in the cases cited by the Government—a significant point that the Government ignores. *See, e.g., Marrero,* 417 U.S. at 657–58, 661, 663, 94 S.Ct. 2532; *see also Bradley,* 410 U.S. at 608, 611, 93 S.Ct. 1151. For example, the Supreme Court in *Bradley* applied the parole sentencing provision in place at the time of the defendant's

commission of the crime, instead of the newly enacted provision, based on the saving provision in the legislation at issue, not on the general Savings Clause at 1 U.S.C. § 109. *See* 410 U.S. at 608, 611, 93 S.Ct. 1151. The FSA, however, contains no internal saving provision, thereby weakening the Government's argument against retroactivity which it bases on *Bradley.* Significance should therefore be attached to the fact that Congress, in view of its stated purpose, did not see fit to append such a savings clause to the FSA.

Lastly, the Court must make note, as Defendant urges, of Congress's failure to disapprove of the retroactive application of the USSC's 2007 amendment to the Federal Sentencing Guidelines, which reduced the base offense level associated with each quantity of crack cocaine by two levels.[8] (*See* Doc. 51 at 19 (citing *Dillon v. United States,* — U.S. ——, 130 S.Ct. 2683, 2688, 177 L.Ed.2d 271 (2010))). Defendant explains that because the USSC treated the 2007 amendment " 'only [as] . . . a partial remedy' for the problems generated by the crack/powder disparity," the FSA represents Congress's "attempt to more fully remedy the problems" and therefore, must be retroactively applied, like the 2007 amendment, to defendants indicted prior to the FSA's enactment but who are not yet sentenced, so as to fully realize Congress's purpose in remedying the disparity. (*Id.* at 19 (quoting *Kimbrough v. United States,* 552 U.S. 85, 100, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007))). The Govern-

---

**8.** The 2007 Amendment, however, did not require courts to retroactively reduce a defendant's sentence. Rather, the retroactive application of the 2007 amendment to the sentencing Guidelines ultimately remained in the Court's discretion. *See* 18 U.S.C. 3582(c)(2) ("[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sen-

tencing Commission, . . . the court *may* reduce the term of imprisonment, . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." (emphasis added)); *see also* U.S.S.G. § 1B1.10(a) (policy statement only permitting reductions of sentences based on retroactive amendment where retroactive amendment actually lowers defendant's applicable guideline range).

ment has not specifically refuted this argument.

The Court finds merit in Defendant's argument surrounding the 2007 Guidelines amendments within the context of Defendant's pending sentence. Like the 2010 emergency sentencing guideline amendments, the 2007 sentencing guideline amendments were intended to address a concern over the 100:1 crack-powder cocaine sentencing disparity. *See* Amendments to the Sentencing Guidelines for United States Courts, 72 Fed.Reg. 28571–28572 (2007). Thus, if the 2007 Amendments were made retroactive to ensure their full impact, *see Dillon*, 130 S.Ct. at 2688 (explaining USSC amendment making 2007 Amendments retroactive), the Court finds, particularly in view of the purpose of the FSA, that there is no reason for the 2010 sentencing guidelines to not be similarly applied, at least to unsentenced defendants, in light of Congress's tacit acceptance of the 2007 Amendments and their retroactivity, *see Kimbrough*, 552 U.S. 85, 106, 128 S.Ct. 558 ("Ordinarily, we resist reading congressional intent into congressional inaction[, b]ut ... Congress failed to act on a proposed amendment to the Guidelines in a high-profile area in which it had previously exercised its disapproval authority....").

In sum, in reading the Savings Clause, the pre-FSA provisions, and the FSA, together with the explicit congressional grant of emergency guidelines amendment authority and the mandate to issue "consisten[t]" and "conforming" amendments, *see supra*, the Court holds that in August 2010, Congress intended to change the course of all federal crack sentencing thereafter by refusing to permit, with the enactment of the FSA, further federal crack sentencings that are not "fair," as expressed by the newly issued emergency guidelines. This includes sentences not yet imposed against defendants who are convicted after the FSA's enactment for criminal conduct that occurred before the FSA's effective date. Thus, although not *expressly* provided in the language of the FSA, the Savings Clause, read with the Act, should not work to prohibit the application of the amended penalty provisions under the FSA, for if it did, it would run contrary to Congress's intent to *immediately* restore fairness to sentencing. In fact, continued application of the pre-FSA penalties would allow and promote admitted unfair sentences into the future until the conclusion of all pre-FSA offenses, including those brought in the Government's discretion after the FSA's enactment. It appears unreasonable and doubtful that Congress intended such disparities and allowances after the enactment of the FSA.

If the Court were to save the pre-FSA penalty provisions and not give recognition to the amended statutory sentencing provision (and thus, to the emergency sentencing guideline amendments), it would arbitrarily deny to one of two defendants equally situated and sentenced following the enactment of the Act—except for the date of one's offense proceeding the enactment of the FSA—the right to avail himself of the more fair sentence that Congress has provided. That is an outcome that Congress surely could not have desired and similarly, that this Court declines to apply in sentencing Defendant. There is no reason for judges to continue in the FSA era to impose sentences under the previous penalty provisions that Congress has declared to be unfair. The Court therefore finds that because the application of the Savings Clause frustrates the congressional intent of the FSA, it should not prohibit the FSA from retroactively applying to Defendant, whose conviction and sentence occur after the enactment of the FSA and the issuance of the emergency guidelines as authorized and directed by Congress. *See Great N. Ry. Co.*, 208 U.S. at 465, 28 S.Ct. 313.

### b. *Distinction from Gomes and Other Eleventh Circuit Post–FSA Decisions*

This Court's holding requires the Court to distinguish the instant case from Eleventh Circuit precedent in *Gomes*, the first Eleventh Circuit decision to address the FSA's retroactive application; *Coleman*; and *Bradley*, all decisions which require a defendant, whose offending behavior occurred prior to August 3, 2010, to be sentenced based on the 100:1 disparity under the pre-FSA penalty provision. The Court finds, however, that because *Gomes*, *see generally* 621 F.3d 1343, as well as *Coleman*, in following the *Gomes* precedent, *see generally* 2011 WL 396473, do not definitively indicate whether the defendant was convicted and sentenced before or after the FSA became effective, it may distinguish the present case from the rulings and reasoning of the Eleventh Circuit in *Gomes* and *Coleman* and of its sister circuits. It further finds that the distinguishing factual mark between those courts like *Douglas* that have held that the FSA applies and those like *Bradley* that have not, is seemingly whether the defendant was sentenced prior to the FSA's effective date. *Compare Bradley*, 409 Fed.Appx. at 309–11, 2011 WL 169228, *1–2 (defendant sentenced while FSA legislation was pending before Congress), *Glover*, 398 Fed. Appx. at 680–81, 2010 WL 4250060, *2 (refusing to apply FSA to defendant sentenced prior to August 3, 2010), *Bell*, 624 F.3d at 814 (same), *Brown*, 2010 WL 3958760, at *1 (same), *and Carradine*, 621 F.3d at 580 (same), *with Elder*, 2011 WL 294507 (applying FSA to defendant sentenced after FSA's and emergency guidelines amendments' effective dates), *Douglas*, 746 F.Supp.2d 220, 2010 WL 4260221 (same), *and Watson*, 2010 WL 4507374 (suspending pre-FSA sentencing penalties in light of *Douglas* decision).

This distinction is further supported by the facts and holding of *United States v. Mack*, one of several district courts in the Eleventh Circuit to directly follow Gomes in refusing to retroactively apply the FSA. *See Mack*, No. 2:04–cr–49–FTM–29SPC, 2010 WL 4068518, *2–3 (M.D.Fla. Oct. 18, 2010) (quoting *Gomes*, 621 F.3d at 1346). The defendant in *Mack*, who was sentenced under the pre-FSA penalty provisions, was sentenced *prior to* the FSA's enactment. *Id.; see also Harris v. United States*, Nos. 3:10–cv–792–J–32TEM, 3:07–cr–56–J32TEM, 2011 WL 397660, *1 (M.D. Fla. Feb. 1, 2011) (refusing to apply FSA to defendant sentenced in 2007 in light of *Gomes* ); *United States v. Cheese*, 2011 WL 64341, *1 (S.D.Ala. Jan. 6, 2011) (citing *Gomes* in support of denial of motion to reduce pre-FSA imposed sentence). The same holds true for the defendants who were denied sentencing under a retroactive application of the FSA by other district courts in the Eleventh Circuit that were decided before *Gomes* or that do not cite to it. *See Sullivan v. United States*, Nos. 8:10–cv–2439–T–24–EAJ, 8:02–cr–122–T–24EAJ, 2011 WL 111679, *1, *2 (M.D.Fla. Jan. 13, 2011) (refusing to reduce defendant's sentence, imposed in 2003, under FSA); *Ohaegbu*, 2010 WL 3490261, *1 (defendant sentenced in 1992); *see also King*, 2010 WL 3490266, *1 (defendant sentenced in 2004).

This difference in the outcome of these cases, which this Court finds is based on the relationship between the timing of the defendants' sentencing and the enactment of the FSA, makes sense, given the need for courts to examine congressional intent in the context of a Savings Clause analysis. Not only is this a difference overlooked by the Government,[9] but it also was not di-

---

9. For example, the Government relies on the Supreme Court's decision in *Bradley*, which considers the issue of retroactive legislation in

rectly addressed by the federal circuit and district courts applying the Savings Clause to bar the retroactive application of the FSA in the cases before them.[10] As previously stated, Congress understandably would not have wanted a large number of defendants sentenced prior to the enactment of the FSA to be released pursuant to the sentence modifications under the FSA.

Yet, to sentence defendants for the first time consistent with the FSA for criminal conduct occurring before August 3, 2010, would be consistent with Congress's intent to immediately restore fairness to cocaine sentencing under the FSA and in accordance with the Commission's temporary emergency guidelines. The application of *Gomes* to this case would therefore render the emergency guidelines of no avail to defendants, except for defendants whose crimes and sentences followed the FSA's enactment.[11] Thus, because Defendant

pleaded guilty and will be sentenced after the FSA's effective date, the Court adopts the reasoning of *Douglas* and distinguishes *Gomes, Coleman,* and *Bradley* to hold that the FSA should apply to Defendant, despite Defendant's commission of crimes before the enactment of the FSA.[12] For all of the foregoing reasons, Defendant's Motion for Declaratory Judgment (Doc. 51) is **GRANTED.**

### *CONCLUSION*

For reasons previously discussed, Defendant's Motion for Declaratory Judgment that Fair Sentencing Act of 2010 Applies to Defendant (Doc. 51) is **GRANTED.** Accordingly, Defendant shall be sentenced pursuant to the provisions of the Fair Sentencing Act of 2010.

the context of defendants who were convicted *prior to* the passage of a new parole sentencing provision, not those who were convicted after its passage. *See* 410 U.S. at 606, 610, 93 S.Ct. 1151. Here, however, as noted above, Defendant did not plead guilty and was not convicted and sentenced until *after* the passage of the FSA. Thus, only once Defendant was sentenced and judgment against Defendant was entered on February 10, 2011, was his conviction complete.

10. This is an oversight likely explained by the absence of a need for these courts to retroactively apply the FSA since Congress had specified August 3, 2010, as the effective date. In other words, as earlier noted, the sentencings of the defendants in these cases occurred prior to the date of the FSA's effectiveness, so the courts had no incentive to immediately effectuate congressional intent behind the FSA's enactment by retroactively applying the Act.

11. The Court also notes that the court in *Gomes* did not discuss § 109 but merely made reference to it. The full and distinct facts in this case were not before that court.

12. The Court notes that it is not the only district court in the Eleventh Circuit to reach this holding. *See Elder,* 2011 WL 294507, *7 ("[T]he Court finds that 'it is clear in the text and structure of the Fair Sentencing Act, in conjunction with the other congressional enactments that establish the overall federal criminal sentencing scheme, that Congress intended the Act to apply to cases pending at the time of the enactment.' In light of the foregoing, an application of the Savings Statute to the FSA would contradict the will of Congress, and such an outcome is to be avoided." (citations omitted)).